# George and Carole Trickett v. Peter and Carla Ochs

[838 A.2d 66]

No. 01-311

Present: Amestoy, C.J., Johnson and Skoglund, JJ., and Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned

Opinion Filed October 10, 2003*

Motion for Reargument Denied November 6, 2003

---

\* This appeal was originally argued in March 2002, and then reargued in September 2003 following the retirement of Justice Morse and the recusal of Justice Dooley from the case.

*Paul S. Gillies* of *Tarrant, Marks & Gillies*, Montpelier, for Plaintiffs-Appellants.

*Peter F. Langrock* and *Abby C. Moskovitz* of *Langrock Sperry & Wool, LLP*, Middlebury, for Defendants-Appellees.

*William H. Sorrell*, Attorney General, and *Michael O. Duane*, Assistant Attorney General, Montpelier, for Amicus Curiae State of Vermont.

¶ 1. **Skoglund, J.** Plaintiffs George and Carole Trickett brought this nuisance and trespass action against their neighbors, Peter and Carol Ochs, alleging that defendants' operation of an apple orchard interfered with plaintiffs' use and enjoyment of their land and caused them emotional distress. Following an evidentiary hearing on plaintiffs' request for injunctive relief, the Addison Superior Court dismissed the action based upon its conclusions that defendants' activities were protected by Vermont's right-to-farm law, 12 V.S.A. § 5753, and that, in any event, previous rulings by the Town of Orwell zoning administrator and zoning board of adjustment collaterally estopped plaintiffs from bringing their claims. Plaintiffs argue on appeal that (1) the right-to-farm law does not apply under the circumstances; (2) even if it does, the law did not create an irrebuttable presumption that barred plaintiffs' nuisance action as a matter of law; (3) applying an irrebuttable presumption would effect a

taking of plaintiffs' property without just compensation; (4) rulings by the zoning administrator and board of adjustment did not have any collateral estoppel effect on plaintiffs' claims; and (5) the court failed to address plaintiffs' trespass claim. Based on our conclusion that neither the right-to-farm law nor collateral estoppel applies under the circumstances of this case, we reverse the superior court's decision and remand the matter for further consideration of plaintiffs' claims.

## I.

¶ 2. Plaintiffs purchased their home from defendants in 1992. At the time of the purchase, the residence was the homestead for an apple orchard and was directly across the road from the barn that served as the main collecting point for the apples. Defendants continued to operate the apple orchard after the sale of the farmhouse, though the business initially had little impact on plaintiffs because most of the apples were immediately transported following harvest to the Shoreham Food Co-op, where they were stored for sale.

¶ 3. During the mid-1990s, defendants expanded their operation in response to changes in market demands. They began waxing their apples and storing them on-site in refrigerated tractor trailer trucks. Tractor trailer trucks also came to the barn to take apples to market. During the winter months, these trucks began arriving in the predawn hours and continued throughout the day. Because the barn is very close to plaintiffs' home, additional noise and light glare entered the home and disturbed plaintiffs.

¶ 4. Before initiating this action, plaintiffs complained to various town and state officials. Because these complaints, and the ensuing actions, are related to one of the issues on appeal, we summarize them here to the extent that they are reflected in the record before us. Plaintiffs first went to the Town of Orwell selectboard, which detailed the complaints and suggested ways to resolve them in an April 1996 letter to defendants. Plaintiffs' complaints concerned (1) lack of maintenance of the road in front of the orchard; (2) blockage of the road by tractor trailer trucks; (3) location of vehicles and farm equipment too close to the road to allow snow plowing or maintenance; (4) excessive noise; (5) glare from truck headlights; and (6) diesel fumes and trespass by tractor trailer trucks on plaintiffs' lawn. Apparently, the letter did not lead to a resolution of the complaints.

¶ 5. In August 1997, plaintiffs complained to the Orwell zoning administrator, claiming that defendants were violating the town's zoning ordinance in a number of respects. Two months later, the zoning administra-

tor rejected the complaint, making several rulings. First, the administrator ruled that defendants were not conducting a light manufacturing operation by constructing pallets and bins on the orchard site. Relying on an earlier letter by the commissioner of agriculture indicating that construction of the pallets and bins was in support of the orchard and thus an incidental accepted agricultural practice, the zoning administrator concluded that the construction was incidental to the operation of the orchard. Second, the administrator ruled that the orchard's operations did not cause (1) glare or light that was a nuisance to other property owners in violation of § 1120 of the Orwell zoning ordinance, or (2) noise incompatible with the reasonable use of the surrounding area in violation of § 1140 of the zoning ordinance. Third, the administrator found that he was without jurisdiction to consider plaintiffs' complaint that defendants were operating a public building without a permit, but noted that the commissioner of agriculture had decided this question adversely to plaintiffs in an earlier ruling. Finally, the administrator concluded that defendants were not improperly storing and using chemicals and pesticides in violation of § 1130 of the zoning ordinance, and further noted that the commissioner had previously ruled that defendants were not violating state pesticide regulations. Plaintiffs appealed these rulings, and, in January 1998, the Orwell board of adjustment denied the appeal without explanation.

¶ 6. Plaintiffs renewed and expanded their complaints in January 2000, this time by letter from their attorney to the zoning administrator. The zoning administrator ruled that nothing had changed since 1997, and that defendants continued to be in compliance with the Orwell zoning ordinance. On appeal, the board of adjustment stated that it would no longer hear complaints regarding defendants' orchard that had already been decided by any state agency. Plaintiffs appealed the board's decision to the environmental court, but later withdrew the appeal. They complained again to the zoning administrator in November 2000, but we have no record of the disposition of that complaint.

¶ 7. The zoning board's reference to state agency decisions concerning the orchard apparently was directed at two communications from the department of agriculture. The first was a letter from the commissioner in October 1997 in response to a complaint from plaintiffs that defendants' construction of pallets and storage and shipping bins, allegedly a major source of the noise, was not an accepted agricultural practice. The commissioner determined that because operation of the orchard was an accepted agricultural practice and the pallets and bins were used exclusively for defendants' apples grown on-site, those land uses were exempt

from local zoning regulation. The commissioner indicated further that the department was continuing to investigate whether defendants were violating pesticide regulations. The second communication was a letter from a department attorney at the request of the zoning administrator and in regard to plaintiffs' January 2000 complaint. The attorney noted that 24 V.S.A. § 4495 prevented the town from regulating defendants' activities to the extent that the zoning bylaws were more restrictive than state law regarding agricultural and farming practices. The attorney also stated that the right-to-farm law might be implicated.

¶ 8. Plaintiffs brought this action in November 2000, alleging that (1) the noise from defendants' operations, specifically the trucks and packing equipment and machinery, interfered with the use and enjoyment of plaintiffs' property; (2) defendants had allowed pesticides and polluted surface water from their operations to flow onto plaintiffs' property; (3) the trucks and defendants' dogs had trespassed on plaintiffs' property; and (4) defendants had shouted obscenities at plaintiffs and assaulted them. Plaintiffs sought an injunction and compensatory and punitive damages. Defendants answered and moved to dismiss on the ground that the right-to-farm law immunized their activities from a nuisance action.

¶ 9. The superior court reserved the motion to dismiss, and the case went to trial. The witnesses were plaintiffs, defendant Carla Ochs, and a sound expert who took measurements of noise from defendants' property. During the trial, defendants asserted that collateral estoppel barred the action, arguing that the findings of the zoning administrator and board of adjustment had preclusive effect as to whether the apple orchard was a "protected agricultural activity." Following the hearing, the court concluded that (1) the right-to-farm law barred plaintiffs' nuisance claims because plaintiffs moved to the site of a known, pre-existing farming operation; and (2) plaintiffs' claims were also barred by the prior findings and conclusions of the department of agriculture and the Town of Orwell regarding defendants' orchard operations. On appeal, plaintiffs argue that the superior court erred by applying collateral estoppel to dismiss their claims, by ruling that the right-to-farm law barred their claims, and by failing to address their trespass claim. We address these issues in turn.

II.

¶ 10. The superior court ruled that the decisions of the zoning administrator, the zoning board of adjustment, and the commissioner of agriculture collaterally estopped plaintiffs from bringing their nuisance claims. Collateral estoppel "bars the relitigation of an issue, rather than a

claim, that was actually litigated by the parties and decided in a prior case." *In re Central Vermont Pub. Serv. Corp.*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001). Collateral estoppel applies when (1) preclusion is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits; (4) there was a full and fair opportunity to litigate the issue in the prior action; and (5) applying preclusion is fair. *Id.*

¶ 11. At the outset, we acknowledge that an administrative judgment can have preclusive effect in a judicial proceeding. See *Lamb v. Geovjian*, 165 Vt. 375, 381, 683 A.2d 731, 735 (1996); *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966); Restatement (Second) of Judgments § 83 (1982). Although our precedents deal directly with res judicata, we conclude that on this point they apply equally with respect to collateral estoppel. See *Lamb*, 165 Vt. at 381-82, 683 A.2d at 736. Nevertheless, for an administrative ruling to have preclusive effect, the agency must have acted "in a judicial capacity" and must have resolved "disputed issues of fact properly before it which the parties . . . had an adequate opportunity to litigate." *Utah Constr. & Mining Co.*, 384 U.S. at 422.

¶ 12. We conclude that at least two of the three decisions that the trial court referred to — those of the zoning administrator and the commissioner of agriculture — do not have preclusive effect because no adjudicative ruling was made in either case. A zoning administrator must investigate complaints and enforce the town's zoning ordinance upon the finding of a violation, see *In re Fairchild*, 159 Vt. 125, 130, 616 A.2d 228, 231 (1992), but does not hold hearings or conduct adjudications. Thus, with respect to the zoning administrator's determination, the present situation is analogous to that in *Delozier v. State*, 160 Vt. 426, 430-31, 631 A.2d 228, 230-31 (1993), where we held that the decision of the investigatory committee of the board of medical practice to forego a disciplinary proceeding was not an adjudicatory decision and thus had no res judicata effect to preclude a later disciplinary proceeding. See 18B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4475, at 503 (2d ed. 2002) ("A simple administrative decision not to initiate an adjudicatory proceeding . . . has no close parallel in judicial procedure; it is clear that it should not support preclusion.").

¶ 13. As for the commissioner of agriculture, he appears to have made only one relevant decision in this case — that the construction of pallets and shipping and storage bins is not a manufacturing operation, but rather an accepted agricultural practice that is part of the larger

accepted agricultural practice of operating an orchard. Like that of the zoning administrator, this was an enforcement decision based on the commissioner's independent investigation without any form of adjudication. Therefore, it does not have preclusive effect. Hence, the only judgments that could have collateral estoppel effect are the two decisions of the zoning board of adjustment. We conclude, however, that these decisions fail to satisfy all of the elements of collateral estoppel.

¶ 14. First, the issues adjudicated in the two actions were not the same. The issue before the zoning board was whether defendants fully complied with the zoning ordinance. In contrast, the issue in the superior court was whether defendants' conduct, particularly the noise generation, was a private nuisance causing damage to plaintiffs. Compliance with the zoning ordinance may be a factor in determining whether defendants' conduct was a nuisance, but it is not determinative. See *Allison v. Smith*, 695 P.2d 791, 794 (Colo. Ct. App. 1984); *Lunda v. Matthews*, 613 P.2d 63, 67 (Or. Ct. App. 1980); *Klein v. Shadyside Health, Educ. & Research Corp.*, 643 A.2d 1120, 1125 (Pa. Commw. Ct. 1994); *Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 666 (Va. 1992).

¶ 15. In this case in particular, compliance with the zoning ordinance is of little consequence to the main nuisance issue — whether defendants generated excessive noise. The Orwell zoning ordinance contains a noise standard, but it is inapplicable to agricultural and forestry uses. Orwell Zoning Bylaws § 1140. Thus, zoning imposes no restriction on the noise generated by defendants' orchard operation. Because the issues in the two actions were not the same, defendants have failed to satisfy the second element of collateral estoppel.

¶ 16. Second, defendants have failed to show that the issue for which the superior court gave the zoning board's decisions preclusive effect was resolved by a final judgment on the merits, the third element of collateral estoppel. In his October 1997 letter, the commissioner indicated that because defendants' activities fell within the definition of "accepted agricultural practices" the town could not restrict those activities at the orchard. The assistant attorney general for the department of agriculture wrote the zoning administrator that, under 24 V.S.A. § 4495, farming practices cannot be restricted by local zoning bylaws. The zoning board appears to have grounded its March 2000 decision on this interpretation of the law, without reaching the merits of plaintiffs' complaints. The January 1998 decision gave no reason for the board's denial of plaintiffs' appeal, and so could also have been based on a perceived limitation of the board's power. In any event, defendants have

failed to meet their burden of showing that the issue to be precluded was "'necessarily and essentially determined in a prior action.'" *State v. Pollander,* 167 Vt. 301, 305, 706 A.2d 1359, 1361 (1997) (quoting *Berisha v. Hardy,* 144 Vt. 136, 138, 474 A.2d 90, 91 (1984)); see also *Ianelli v. Standish,* 156 Vt. 386, 388, 592 A.2d 901, 902 (1991) (party seeking preclusion must produce record of prior proceeding to enable court "to pinpoint the exact issues previously litigated").

¶ 17. Because we conclude that neither the second nor third elements of collateral estoppel have been met, we need not consider whether plaintiffs had a "full and fair opportunity" to litigate issues in the zoning appeals related to the issues raised in their nuisance complaint. Cf. *Cold Springs Farm Dev., Inc. v. Ball,* 163 Vt. 466, 469-71, 661 A.2d 89, 91-92 (1995) (adverse judgment in small claims action for return of deposit given by purchaser of business did not preclude purchaser from defending against seller's breach of contract action in superior court, given differences in quality and extensiveness of procedures followed in two courts). In any event, defendants have failed to meet their burden of demonstrating that all of the elements of collateral estoppel have been met.

## III.

¶ 18. We now turn to the right-to-farm law. In its amicus curiae brief, the department of agriculture concedes that the collateral estoppel ruling was erroneous, but contends that the decision still must be affirmed because, as a matter of law, defendants' activities are protected by Vermont's right-to-farm law, 12 V.S.A. §§ 5751-5753. Plaintiffs counter that the right-to-farm law does not apply because (1) defendants' agricultural activities were not established before the residential use of plaintiffs' property, and (2) defendants expanded their farming activities beyond those protected by the law. Plaintiffs also argue that even if the law applies, it creates only a rebuttable presumption that defendants' activities are not a nuisance, and that they presented sufficient evidence to rebut that presumption.

¶ 19. The superior court concluded that the right-to-farm law applies because plaintiffs moved to a known area for farm activity. Relying on the findings of the agriculture commissioner and the zoning administrator, the court found that defendants' agricultural activities conform to state and local requirements and are reasonable agricultural activities. Finally, the court found that plaintiffs had not raised an issue of public safety or health.

¶ 20. We agree with plaintiffs that the court erred in dismissing plaintiffs' suit based on the right-to-farm law. The stated purpose of the law is as follows:

> The legislature finds that agricultural production is a major contributor to the state's economy; agricultural lands constitute unique and irreplaceable resources of statewide importance; that the continuation of agricultural activities preserves the landscape and environmental resources of the state, contributes to the increase of tourism, and furthers the economic self-sufficiency of the people of the state; and that the encouragement, development, improvement, and preservation of agriculture will result in a general benefit to the health and welfare of the people of the state. The legislature further finds that *agricultural activities conducted on farmland in urbanizing areas are potentially subject to lawsuits based on the theory of nuisance,* and that these suits encourage or even force the premature removal of the lands from agricultural use. It is the purpose of this act to protect reasonable agricultural activities conducted on farmland from nuisance lawsuits.

12 V.S.A. § 5751 (emphasis added).

¶ 21. The substance of the law is in § 5753(a), which provides:

> (a) *Agricultural activities* conducted on farmland, if consistent with good agricultural practices and *established prior to surrounding non-agricultural activities, shall be entitled to a rebuttable presumption that the activity does not constitute a nuisance.* If an agricultural activity is conducted in conformity with federal, state, and local laws and regulations, it is presumed to be a good agricultural practice not adversely affecting the public health and safety. The presumption may be rebutted by a showing that the activity has a substantial adverse effect on the public health and safety.

(Emphasis added.) Under § 5752, farmland means "land devoted primarily to commercial agricultural activities," and agricultural activities includes the growing, raising and production of fruit.

¶ 22. Our primary responsibility in construing a statute is to determine and implement the intent of the Legislature. See *State v. Lussier,* 171 Vt. 19, 23, 757 A.2d 1017, 1020 (2000). To do so, we must look to the language of the entire statute, "along with its purpose, effects, and consequences."

*Id.* In this instance, we are aided by an express statement of legislative intent.

¶ 23. There is little doubt as to the purpose behind Vermont's right-to-farm law. Indeed, virtually all states have enacted right-to-farm laws to deal with the conflict that develops "[a]s the population of the nation grows and is dispersed into traditionally rural areas." 13 N. Harl, Agricultural Law § 124.01, at 124-2 (1993). The increased encroachment of nonagricultural uses upon traditional agricultural uses "has created an atmosphere in which farmers throughout the nation have been subjected to nuisance suits." *Id.* Like similar statutes across the nation, Vermont's right-to-farm law seeks to protect farmers from nuisance suits resulting from such circumstances.

¶ 24. While the present case might fit within a broad reading of the Legislature's rationale, it arises from unique circumstances that have little to do with the problem of urbanization. All of the structures that are involved in this lawsuit were once part of the same farm and were constructed in close physical proximity so that the farmer could reside near the work. In a traditional New England pattern, the farmhouse lies directly across a rural dirt road from the barn and other farm buildings. The evidence indicates that the house is roughly fifty feet from the nearest farm building. As a result, although defendants own many acres of land, their intense land-use activities occur so close to plaintiffs' house that any adverse effect on plaintiffs is maximized.

¶ 25. The origin of this conflict was the act of selling the farmhouse to persons who have no involvement in farm activities. Buildings built to function together for one economic and social unit must now function separately. As a result, land use conflicts once worked out over the dinner table now end up in court. The conflict sown by the sale of the house took root and grew when business conditions in the apple industry required a significant change in defendants' methods of operation. As defendants' evidence disclosed, they could no longer rely upon the local co-op to store and market their apples. Rather, they had to wax the apples at the farm. They also had to store, pack and ship the apples from the farm. They purchased and used refrigerated tractor-trailer trucks to extend the life of the apples so they could ship them year-round. According to plaintiffs' evidence, although the new methods of operation did not increase the number of apples sold, they increased the truck traffic and noise at the farm and extended both the hours of operation and the season in which those operations occurred.

¶ 26. Because the circumstances present here are not within the core concern of the Legislature, the statutory language does not readily fit.

For instance, the statute requires that the protected agricultural activities must be "established prior to surrounding non-agricultural activities." § 5753(a). Here, the evidence shows that the farmhouse was built in the early nineteenth century and was always used as a residence. Even if we view the "surrounding non-agricultural activities" as commencing with plaintiffs' purchase of the house, a view not clearly consistent with the statutory language, we must still establish what were the protected "agricultural activities" that existed "prior to" the commencement of the nonagricultural activities. Unless we define the prior protected activities to include the expanded orchard operations engaged in by defendants after plaintiffs bought their home, the statute does not apply. We decline to do so.

¶ 27. Our review of the case law in other jurisdictions supports our decision here. Four states — Arizona, Ariz. Rev. Stat. Ann. §§ 3-111-112 (2002), Kansas, Kan. Stat. Ann. § 2-3202 (2001), Oklahoma, Okla. Stat. Ann. tit. 50, § 1.1 (2002), and Washington, Wash. Rev. Code Ann. §§ 7.48.300-.310 (supp. 2003) — have right-to-farm laws that are virtually identical to ours. In two of those states — Washington and Kansas — there are court decisions that address statutory application issues similar to those in this case.

¶ 28. In the Washington case, *Buchanan v. Simplot Feeders Limited Partnership*, 952 P.2d 610 (Wash. 1998), the plaintiffs owned and operated a farm that adjoined land used primarily as rangeland. Thereafter, a small cattle-feeding operation began on the adjoining land. When the defendant took over the operation, it increased the number of cattle significantly and began operating a small meat-processing plant on the property. The result was a significant increase in flies and foul and noxious odors, which led to the plaintiffs' nuisance action. As here, the defendant invoked the state's right-to-farm act.

¶ 29. The Washington Supreme Court confronted the difficulty of applying the statute to a situation where the nonagricultural activity preceded the agricultural activities giving rise to the tort claim:

> The third condition [of the statute] requires the challenged agricultural activity to have been established prior to surrounding nonagricultural activities before the nuisance exemption applies. This condition also suggests an established farm may not be able to institute a new or radically expanded "activity" and maintain nuisance immunity, because the language of the statute focuses on agricultural *activity* that has been established prior to the urban encroachment. This third condition presents an ambiguity within the structure of [the statute]: One

> would assume the statute's nuisance exemption is limited to situations where the nuisance suit arises *because of* the subsequent surrounding nonagricultural activities, since the Legislature expressly states the statute is designed to protect farms *"in urbanizing areas"* from nuisance suits. The language of the statute, however, does not explicitly make this connection between the nuisance suit and the urbanization.

*Id.* at 614 (emphasis in original; citations omitted). Because of the ambiguity, the court looked more closely at the statement of legislative intent. In the end, it construed the statute to allow nuisance immunity only "where the nuisance suit arises because of urban encroachment into an established agricultural area." *Id.* According to the court, the right-to-farm statute could not immunize defendants against "nuisance actions brought by an agricultural or other rural plaintiff, especially if the plaintiff occupied the land before the nuisance activity was established." *Id.* at 616.

¶ 30. In the Kansas case, *Finlay v. Finlay*, 856 P.2d 183 (Kan. Ct. App. 1993), the plaintiffs lived across a rural road from a cattle farm. The farm had a feeding pen near plaintiffs' house, but the cattle were generally allowed to graze over pasture land. When the defendant purchased the farm, however, he kept the cattle in the feeding pen area from November through May, apparently causing odors to enter the plaintiffs' house. The plaintiffs brought a nuisance action, and the defendant invoked the right-to-farm act. The Kansas Court of Appeals found the statute inapplicable based on a rationale similar to that of the Washington court in *Buchanan*:

> The facts in this case show that defendant, to an extent, changed the use of the property. Although the previous owners had raised cattle on the property, defendant made improvements to the pen and began conducting a feedlot type operation. The previous owner had allowed his cattle access to additional pasture; defendant confined his cattle to the 1.8 acre pen for substantial periods of time. Therefore, . . . the record shows that any change in use occurred only on defendant's property and not on the surrounding property, thereby negating the element in [the statute] that the agricultural activity be established prior to the surrounding nonagricultural activity.
>
> . . . The record also shows that both defendant's and plaintiffs' lands have always been used for agricultural purposes. Plaintiffs' residence is a farm home, located in an agricultural

area, not a nonagricultural use which has moved into an agricultural area.

From these facts, it is apparent that the [statute's] stated purpose of protecting agricultural land from the encroachment of nonagricultural activities has no application here. Further, the evidence does not establish that defendant's land was used for the feeding and raising of cattle prior to the plaintiffs' property being used as a farm home.

*Id.* at 188.

¶ 31. As noted, *Buchanan* and *Finlay* were decided under statutes virtually identical to Vermont's right-to-farm law. Other courts have also reached similar conclusions construing statutes with different language but the same purpose. See *Crea v. Crea*, 16 P.3d 922, 925 (Idaho 2000) (Idaho right-to-farm act does not apply where nuisance arises because of expansion of agricultural activity rather than because of changes in surrounding nonagricultural uses); *Flansburgh v. Coffey*, 370 N.W.2d 127, 131 (Neb. 1985) (same under Nebraska right-to-farm act); *Durham v. Britt*, 451 S.E.2d 1, 3 (N.C. Ct. App. 1994) (legislature did not intend to apply North Carolina right-to-farm act to "situations in which a party *fundamentally changes the nature of the agricultural activity* which had theretofore been covered under the statute. For example, a fundamental change could consist of a significant change in the type of agricultural operation, or a significant change in the hours of the agricultural operation.").

¶ 32. Based on the reasoning in the above cases, with which we concur, we conclude that Vermont's right-to-farm law does not apply under the circumstances of this case. The activities of defendants giving rise to plaintiffs' nuisance claim commenced after plaintiffs had purchased their home. Although plaintiffs are not farmers, they used their home in the same way it had been used for nearly two centuries — as a residence — and the conflict between the parties concerned that use. And finally, the case does not involve urban encroachment.

¶ 33. Defendants argue that the right-to-farm law protects them because (1) plaintiffs have made no showing that defendants' activities have had a substantial adverse effect on *public* health and safety, and (2) defendants have shown that their agricultural activities complied with all federal, state, and local laws and regulations. Defendants' reliance on plaintiffs' failure to demonstrate a threat to public health or safety is grounded on the applicability of the right-to-farm law to the facts of this case, and thus is unavailing in light of our decision today. The principal

problem with defendants' reliance on their compliance with federal, state and local regulations is that there is no applicable regulation of the activities that form the basis of plaintiffs' complaint. As described above, the main basis for plaintiffs' complaint is the excessive noise created by defendants' operations, particularly the noise emanating from various vehicles, and the frequency and hours of that noise. Nothing in the record indicates any applicable federal, state or local laws regulating the activities of defendants alleged to constitute a nuisance.

¶ 34. As referenced by the department's attorney in a 1997 letter to plaintiffs, the commissioner of agriculture has the power to define accepted agricultural practices:

> In accordance with 10 V.S.A. § 1259(i) and to implement and enforce accepted agricultural practices as defined under 10 V.S.A. § 1259(f), the commissioner of agriculture, food and markets shall develop by rule and shall implement and enforce agricultural land use practices in order to reduce the amount of agricultural pollutants entering waters of the state. These agricultural land use practices shall be created in two categories. One category shall consist of accepted agricultural practices as defined under subsection 1259(f) of Title 10. These practices shall be standards to be followed in the conducting of farming activities. Persons engaged in farming, as defined in 10 V.S.A. § 6001, who follow these practices shall be presumed to be in compliance with water quality standards. . . .

6 V.S.A. § 4810(a); see also *id.* § 4811(1) (commissioner has power to make rules "which define practices described in section 4810" as well as any other rules deemed necessary to carry out provisions of chapter). Section 1259 of Title 10 is a water pollution control statute that defines prohibitions on unlawful discharge. But some of its provisions "shall not regulate accepted agricultural . . . practices, as such are defined by the commissioner[] of agriculture." 10 V.S.A. § 1259(f). Subsection (i) of § 1259 requires the secretary of the agency of natural resources to delegate to the commissioner of agriculture "the state agricultural non-point source pollution control program planning, implementation and regulation."

¶ 35. Thus, consistent with the relevant statutes, the accepted agricultural practices adopted by the commissioner are almost entirely concerned with water pollution. They contain no regulation of noise and no description of when the emission of noise is an accepted agricultural practice. Nor is there any specific local regulation of noise from agricultural operations. Although the Orwell zoning regulations specify a decibel

noise limit at property lines, that noise limit is inapplicable to agricultural operations. In any event, as noted, a land use may comply with the local zoning ordinance and other relevant regulations but still constitute a nuisance because of the conditions or manner of operation of the use. See *Desruisseau v. Isley*, 553 P.2d 1242, 1246 (Ariz. Ct. App. 1976) (compliance with zoning ordinance is factor in determining reasonableness of activity, but is not conclusive as to whether activity constitutes nuisance); *Allison*, 695 P.2d at 794 (even if particular use complies with zoning regulations, it may still constitute private nuisance); *Herbert v. Smyth*, 230 A.2d 235, 238 (Conn. 1967) ("There can be no doubt that a use which does not violate zoning restrictions may nonetheless create a common-law nuisance."); *Lunda*, 613 P.2d at 67 (zoning permits general classifications of uses of property, but does not approve manner of conducting business that constitutes nuisance); *Klein*, 643 A.2d at 1125 (land use can obtain proper zoning approval under valid zoning ordinance, and yet, by reason of manner of its operation or its particular nature, still constitute nuisance); *Bowers*, 419 S.E.2d at 665 (zoning classification of property cannot immunize business from nuisance action).

## IV.

¶ 36. Even when engaged in a lawful business use, the owner of the business must act in a reasonable manner so as not to unreasonably interfere with the rights of adjoining property owners. *Winget v. Winn-Dixie Stores, Inc.*, 130 S.E.2d 363, 367 (S.C. 1963) ("The right of one to make such lawful use of his property as he may desire must be applied with due regard to the correlative right of the other to be protected in the reasonable enjoyment of his property."). "The problem is striking a balance as nearly as possible between their respective rights." *Id.*

¶ 37. In determining whether a land use of a lawful business constitutes a nuisance, courts must consider both the extent of the interference, see *Coty v. Ramsey Assocs.*, 149 Vt. 451, 457, 546 A.2d 196, 201 (1988) (to be considered nuisance, interference with use and enjoyment of another's property must be both objectively unreasonable and substantial), and the reasonableness of the challenged activities in light of the particular circumstances of the case. See *Schlotfelt v. Vinton Farmers' Supply Co.*, 109 N.W.2d 695, 698 (Iowa 1961) (fair test as to whether operation of lawful business constitutes nuisance is reasonableness of conducting business in manner, at place, and under circumstances in question); *Winget*, 130 S.E.2d at 367 (whether particular use of property is reasonable or constitutes nuisance depends on facts of each case and numerous factors); see also 2 D. Dobbs, The Law of Torts § 465, at 1327 (2001) ("The

defendant's use of his land may be broadly consistent with the uses to which the neighborhood is dedicated, yet because of the magnitude, frequency, or duration, the use may constitute a nuisance."). Irrespective of the utility of the land use, the question may come down to whether the activities causing the harm are reasonably avoidable. *Id.* at 1328-29.

¶ 38. Applying these principles to the instant case, we acknowledge that defendants should be given every opportunity to operate their lawful business as necessitated by modern marketing demands. But they must also be required to tailor their operation to eliminate any substantial and unreasonable interference with plaintiffs' property.

## V.

¶ 39. In summary, we conclude that plaintiffs are not collaterally estopped from bringing their nuisance action, and that Vermont's right-to-farm law, 12 V.S.A. §§ 5751-5753, does not apply in the circumstances of this case. Because of our resolution of these issues, we need not consider plaintiffs' takings claim. The case is remanded for the superior court to give further consideration to plaintiffs' nuisance and trespass claims in light of this opinion.

*Reversed and remanded.*