STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: White 5 Lot Subdivision | } | Docket No. 265-12-05 Vtec |
| (Appeal of White) | } |  |
|  | } |  |

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicants Richard and Linda White appealed from a decision of the Development Review Board (DRB) of the Town of Norwich denying their 2005 application to create a five-lot subdivision of a 77.1-acre parcel of land. Appellant-Applicants are represented by Paul S. Gillies, Esq.; the Town is represented by Frank H. Olmstead, Esq.; and Interested Person Ann Berry represents herself. Appellant-Applicants and the Town have moved for summary judgment. The following facts are undisputed unless otherwise noted.

Appellant-Applicants Richard and Linda White own a 77.1-acre parcel of land located in the Rural Residential zoning district northeasterly of the intersection of Chapel Hill Road and Beaver Meadow Road. This parcel is the retained parcel of a two-lot subdivision of an 80.69-acre parcel of land approved in 2003. They now seek approval to divide it into five[1] development lots.

In 2003, Appellant-Applicants received Planning Commission approval to subdivide the original 80.69-acre parcel of land into two lots of approximately 3.59 acres and 77.1 acres in area (the "2003 Subdivision Decision"). The 77.1-acre lot is the lot now proposed for further subdivision in the present application. The 2003 Subdivision Decision was not

---

[1] An appeal of the DRB's July 2006 decision not to make a density determination in its decision on the merits of preliminary approval for a four-lot subdivision application for the same parcel is the subject of Docket No. 175-7-06 Vtec, and is on inactive status pending resolution of the present appeal.

1

appealed and therefore became final. 24 V.S.A. §4472(d). It may not be challenged, either directly or indirectly. Id.

On November 28, 2005, the DRB denied Appellant-Applicants' application to subdivide the 77.1-acre lot into five lots on the sole ground that "the maximum number of lots on the Property is four" based on the number of allowable lots remaining after the smaller of the lots approved in the 2003 decision had been sold. In its 2005 decision, the DRB did not make new findings regarding the appropriate density calculation for the 77.1-acre parcel[2] considered on its own. Rather, the DRB relied on the Planning Commission's calculation in the 2003 Subdivision Decision that the undivided 80.69-acre parcel had an allowable density of five lots. The DRB reasoned that since the 80.69-acre parcel had already been divided into two lots by Appellant-Applicants' sale of a 3.59-acre lot from the subdivision approved in 2003, the remaining retained lot had a maximum density of four lots. This appeal followed.

Determinations of allowable density for subdivisions[3] in Norwich are governed by §3.2 of the Subdivision Regulations;[4] within which §3.2(B) is applicable to land in the Rural Residential district. Allowable density is based on the characteristics of the land, starting with a nominal density of one unit per every two acres of "developable area," and yielding a total allowable density not less dense than one unit per every twenty acres of developable

---

[2] In its November 28, 2005 Decision, the DRB also reconsidered and "overruled" its earlier determination that the maximum allowable density for the 77.1-acre parcel was two lots.

[3] The regulations treat Planned Unit Developments (PUDs) and Planned Residential Developments (PRDs) differently; Table 3.1 does not apply to PUDs and PRDs, although Table 3.2 does apply.

[4] The parties agree that pertinent sections of the Subdivision Regulations have not changed since the 2003 Subdivision Decision.

area.

Thus, to determine whether any subdivision may be approved, it is necessary for the DRB first to determine the amount of developable area within the parcel proposed for subdivision, by reference to the methodology in Table 3.1. The calculation begins with the portions of the parcel that are not "developable" at all, consisting of areas with slopes in excess of 25%, areas in the 100-year floodplain, and areas of surface waters and Vermont Class 1 and Class 2 wetlands; these areas must be deducted entirely from the total amount of land in the parcel. After those areas are deducted, the developable area must be further adjusted by deducting 50% of the area within two other categories: areas with slopes between 15% and 25%, and areas within the setback buffers within 25 feet on either side of surface waters and within 50 feet of wetlands.

After the total developable area in the parcel is calculated, then the adjustment factors in Table 3.2 are applied to determine the allowable development density. The first adjustment addresses the quality of the town road accessed by the parcel's driveway or development roadway, the second adjustment addresses the travel distance from the town offices over that town road, and the third adjustment addresses the parcel's proximity to certain open lands or public lands (the Appalachian Trail Corridor and Norwich Fire District Agreement lands).

Appellant-Applicants argue that the conclusion regarding maximum lot density for the 77.1-acre parcel in the 2003 Subdivision Decision was mere dictum that should not bind future subdivisions of the remaining 77.1-acre parcel, because the 2003 application had not sought to further subdivide the 77.1-acre parcel. That is, Appellant-Applicants argue that the 2003 determination of the maximum lot density for the parcel as a whole was not necessary to the 2003 decision on the then-two-lot subdivision, citing cases analyzing collateral estoppel and the preclusive effect of administrative decisions, e.g., Trickett v. Ochs, 2003 VT 91, 176 Vt. 89, 94 (2003).

It is important to recognize that 24 V.S.A. §4472(d) holds municipal zoning litigation

3

to a higher standard of finality than does the general law of collateral estoppel in the administrative context. A potential litigant's "failure to appeal forecloses collateral attacks on zoning decisions, even where the zoning body's authority is challenged." City of South Burlington v. Dept. of Corrections, 171 Vt. 587, 591 (2000), and see cases cited therein. Also see, e.g., In re: Sisters & Brothers Invest. Group, LLP, Docket No. 105-6-06 Vtec (Vt. Envtl. Ct., Feb. 21, 2007), slip op. at 6 ("§4472 is broader than issue and claim preclusion").

In any event, in order to decide whether to approve the two-lot subdivision in 2003, the Planning Commission was in fact obligated to determine the entire parcel's developable area and its allowable density, for three reasons. First, §3.2(B)(2) required the Planning Commission (now the DRB) to determine maximum density for all subdivisions, except as provided in §3.2(D) for PUDs and PRDs. Second, if the 3.59-acre parcel had contained no developable area at all, it could not have been approved. Most importantly, it was necessary for the Planning Commission to determine the allowable density for the entire parcel, in order to determine whether the 3.59-acre parcel was undersized, and, if so, to determine how much remaining land would have to be reserved as open space, as required by §3.2(B)(1).

In the 2003 Subdivision Decision, the Planning Commission calculated the "allowable density" under §3.2(B) of the Subdivision Regulations for the 80.69-acre property as five lots, based on the following measurements: "access from a paved road, over 4.5 miles from Tracy Hall, 80.6 total acres, 9 acres over 25% slopes, 38.6 acres with 15% to 25% slopes, and .4 acres buffer from surface waters." (Emphasis added.) The 2003 Subdivision Decision also found that access to the 3.59-acre lot was "by an existing driveway from Stagecoach Road, a private road off of Beaver Meadow Road," and that access to the remaining 77.1-acre lot "will be by a driveway also from Stagecoach Road,"[5]

_____

[5] As the Town also did not appeal the 2003 Subdivision Decision, it cannot now claim that the subdivision access is in fact via Chapel Hill Road, unless Appellant-Applicants' present subdivision proposal shows a change in the driveway configuration

4

which "will need to be widened to meet Norwich Private Highway specifications."

Applying the methodology in §3.2(B) to the facts found by the Planning Commission in 2003, the 2003 Subdivision Decision correctly calculated[6] the number of lots for the 80.6-acre parcel as five lots, each having a minimum size of ten acres.

The Subdivision Regulations provide for the approval of an undersized lot, §3.2(B)(1), but, under that section, in the event the proposed lot size is less than that calculated according to the maximum density, "the balance of the land" required to make up the minimum lot size "shall be reserved as open space." This open space land may be held in common or remain with another lot. Thus, implicit in the 2003 Subdivision

---

with new driveways to Chapel Hill Road. The parties have not supplied the Court with a subdivision plan in connection with the present motions.

[6] The first step is to determine the developable area of the original 80.6-acre parcel. Of the 80.6 acres, the 9 acres with slopes in excess of 25% must be excluded entirely, leaving 71.6 acres of developable area. Of those 71.6 acres, a further reduction must be taken of 50% of the 38.6 acres with slopes between 15% and 25%, leaving 52.3 acres of developable area. Of those 52.3 acres, a further reduction must be taken of 50% of the 0.4 acres in the setback or buffer area from surface waters, leaving 52.1 acres of developable area. The developable area of the parcel could have been subdivided into twenty-five two-acre lots if none of the Table 3.2 adjustments were necessary.

The next step is to apply the adjustments from Table 3.2 to the two-acre lot size, to calculate the maximum density. The 2003 Subdivision Decision determined that access to both lots was via the proposed driveway or development access road to Beaver Meadow Road, which the parties agree is a "paved Class 2 Road," so that no access adjustment is necessary. Travel distance from the Town Office to the intersection of Stagecoach Road with Beaver Meadow Road is 4.8 miles, within the range of "4.5 to 5.5 miles" for which the density adjustment factor is 2.5, making the minimum lot size five acres (two acres x 2.5). (In any event, whether travel distance is measured from the Town Office to the intersection of Stagecoach Road with Beaver Meadow Road or to the parcel's road frontage on Chapel Hill Road (5.4 miles), the travel distance falls within the range of "4.5 to 5.5 miles.") The parcel also shares a boundary with Norwich Fire District Agreement Lands, for which the density adjustment factor is 2, making the minimum lot size ten acres (five acres x 2). The complete calculation results in a maximum allowable density of five ten-acre lots, calculated by dividing the 52.1 acres of developable area by the ten-acre adjusted lot size.

Decision's approval of the creation of a 3.59-acre lot and a 77.1-acre lot when the minimum lot size was ten acres, was the determination that the remaining 6.41 acres of the ten-acre lot size attributable to the undersized lot is required to remain as open space within the 77.1-acre retained lot.

Appellant-Applicants have not provided a plan for the present proposed subdivision that would show which 6.41 acres of the 77.1-acre lot will be designated as open space attributable to the 2003 undersized lot. Nor have they shown whether any of the 2003 undersized lot contained any undevelopable[7] area. In any event, the Town is correct that it is for the DRB in the first instance to perform those calculations, if necessary. See V.R.E.C.P. 5(i).

Therefore, although the 2003 Subdivision Decision is final and binding, it is only final as to what that decision decided. Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 292 (1981). The 2003 Subdivision Decision decided the underlying facts and the maximum number of lots, minimum lot size, and resulting density on the original 80.6-acre parcel, as to the amounts of land on that parcel having slopes greater than 25% and between 15% and 25%, and as to which road provided access to each of the two

---

[7] In their statement of undisputed facts, Appellant-Applicants claim that the 77.1-acre parcel contains 7.8 acres with slopes greater than 25%, although the 2003 Subdivision Decision found that the original parcel contained 9 acres with slopes greater than 25%. This discrepancy suggests either that the 2003 3.59-acre lot contained 1.2 acres with slopes greater than 25%, or that facts are disputed regarding the amount of land in this category in the 77.1-acre lot. Similarly, their statement of undisputed facts claims that the 77.1-acre parcel contains 37 acres with slopes between 15% and 25%, although the 2003 Subdivision Decision found that the original parcel contained 38.6 acres with slopes between 15% and 25%. This discrepancy suggests either that the 2003 3.59-acre lot contained 1.6 acres with slopes between 15% and 25%, or that facts are disputed regarding the amount of land in this category in the 77.1-acre lot. These discrepancies alone would make the difference between a 48.6-acre developable area calculation for the 77.1-acre parcel (yielding only four remaining lots) and a 50.6-acre developable area calculation (yielding five remaining lots), even without accounting for the 6.41 acres of open space that must still be reserved as attributed to the 2003 3.59-acre lot.

resulting lots. Nevertheless, that finality does not necessarily determine whether Appellant-Applicants are limited to four lots on the remaining parcel. Rather, Appellant-Applicant must provide the DRB with the necessary information regarding the configuration of the proposed subdivision, its topography regarding the location of the undevelopable land on which the 2003 Subdivision Decision's findings were made, the remaining undevelopable land, and what land is proposed to be reserved for the 6.41 acres of open space required due to the 2003 approval of the 3.59-acre undersized lot. It will then be for the DRB in the first instance to calculate whether the 77.1-acre parcel can be developed into four or five resulting lots, and in what configuration.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both motions for summary judgment are DENIED in part and GRANTED in part, as discussed above, concluding this appeal (Docket No. 265-12-05 Vtec). A telephone conference has been scheduled in Docket No. 175-7-06 Vtec to discuss the effect of this decision on the procedural status of that appeal, and whether it should also be remanded to be considered by the DRB in light of the outcome of the present appeal. We will postpone issuing a judgment order in the present appeal until after that conference, to allow the parties to consider the possibility of mediation in Docket No. 175-7-06 Vtec and whether such mediation should include the issues that would otherwise be before the DRB upon the conclusion of the present appeal.

Done at Berlin, Vermont, this 19th day of March, 2007.

_____
Merideth Wright
Environmental Judge

7