**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| In re: Miller Subdivision Final Plan | } | Docket No. 178-7-06 Vtec |
| (Appeal of Fothergill) | } | |
| | } | |

### Decision on Cross Motions for Summary Judgment

This appeal arises out of the Town of Calais (Town) Development Review Board's (DRB) approval of Appellee Chris Miller's application for final plan approval of his two-lot subdivision of property located at the corner of Worcester Road and West County Road in the Maple Corner section of Town. John (Jeff) Fothergill appealed the DRB approval.

Appellee and Appellant have filed cross motions for summary judgment on all of the questions raised in Appellant's Statement of Questions; the Court conducted a site visit and heard oral argument on the motions on Monday, March 19, 2007. Appellant is represented by Glen C. Howland, Esq. and John P. Riley, Esq.; Appellee is represented by David John Mullett, Esq., and the Town of Calais is represented by its non-attorney Zoning Administrator, Dorothy O. Naylor.

### Background[1]

1. Appellee owns two parcels of land, totaling 2.97± acres, located at 117 West County Road in the Town of Calais. Appellee acquired the two parcels in a single deed that separately describes the two parcels, as is detailed below.

2. At the hearing on the pending motions, Appellee and his counsel referred to the "Main Parcel" of his property, which is undisputed as having 2.92± acres.

3. Appellee's second parcel is very small in size, containing no more than 5/100th of an acre. It abuts Curtis Pond and is separated from the Main Parcel by a private right of way, known as Camp Road.[2] This second parcel has been referred to as the "Shoreland Parcel".

4. Appellee does not own the land upon which Camp Road is located.

5. Appellee now seeks to subdivide the Main Parcel.

---

[1] All facts are undisputed unless otherwise noted.

[2] This private right of way is sometimes referred to as "Camper's right-of-way".

6. The Main Parcel is bordered by County Road to the southeast, Worcester Road to the southwest and the private Camp Road to the northwest.

7. In 1966, Arthur and Christie Parker sold the entire property as part of a larger parcel to Enna M. Bates. The 1966 Warranty Deed listed as "PARCEL NO. 1" a larger parcel, of which Appellee's 2.92± acre Main Parcel was a portion. The 1966 Parker to Bates Warranty Deed separately describes the .05± acre Shoreland Parcel as "PARCEL NO. 2."

8. In 1998, the property was sold, again as part of a larger parcel, by Enna Remick (formerly Bates) to Chris and Josie A. Miller. The 1998 Warranty Deed also listed the property of which the 2.92± acre parcel was a portion as "PARCEL NO. 1" and the smaller, .05± acre parcel as "PARCEL NO. 2."

9. The "PARCEL NO. 1" that the Millers acquired in 1998 contained 8.92± acres.

10. On October 27, 2000, the Millers sold the northern most three acres of the Main Parcel, after having received subdivision approval, and retained 5.92± acres of the Main Parcel.

11. In July, 2001, the Millers submitted an application to divide their remaining 5.92± acre Main Parcel into two lots, one of which is the 2.92± acre parcel at issue in this appeal, and another of approximately three acres in size. At the time of this subdivision, the minimum lot size for the applicable zoning district was three acres.

12. On August 16, 2001, the Zoning Board of Adjustment (ZBA) granted the Millers a variance of the prior minimum lot size requirement, allowing them to subdivide their property into two lots of approximately three acres and 2.97 acres. This acreage calculation was based upon Mr. Miller's representation to the ZBA that he holds and uses the two parcels on either side of Camp Road together.

13. There has been no evidence presented that the two parcels were required to be held as one parcel, either by condition of the ZBA variance approval or by some document executed by Appellee and recorded in the Calais Land Records.

14. Appellee concedes, however, that he has assented to the listing by the Calais Board of Listers of all his property as one for purposes of determining the assessed value of his property.

15. Currently, Appellee is the sole owner of the Main Parcel and the Shoreland Parcel.

16. On March 9, 2006, Appellee submitted an application to further subdivide the 2.92± acre Main Parcel into two lots. That application is the subject of this appeal.

17. Lot 1A, as proposed, would be 1.24± acres in size, with an existing main house and outbuildings.

18. Lot 1B, as proposed, would be 1.68± acres in size. Appellee proposes to relocate an existing outbuilding so that it is entirely located on the new Lot 1B.

19. The record provided to this Court is somewhat confusing with respect to which property Appellee proposed to subdivide in his 2006 application. All initial references are to Appellee's "2.92 acre" parcel, thereby seeming to imply that the subdivision was proposed only for the Main Parcel. However, the site plan approved by the DRB, as well as the DRB Decision on the final plan application, indicates that the subdivision would also divide the Shoreland Parcel.

20. Both proposed Lots 1A and 1B are located within 800 feet of Curtis Pond.

21. On March 30, 2006, the DRB granted conceptual plan approval, finding that both proposed lots were located in the Village District pursuant to the Town Land Use and Development Regulations (the Regulations). The DRB subsequently granted preliminary plan review approval for the two-lot subdivision of the 2.92± acre parcel.

22. After additional public hearings, the DRB granted final plan approval in a written decision dated July 6, 2006.

23. At oral argument on the pending motions for summary judgment, Appellee amended his 2006 application, to delete any reference to a subdivision of the Shoreland Parcel. Appellant represented, through counsel, that he did not object to this amendment.

24. The amended application currently before the Court is an application to subdivide only the Main Parcel. Appellee no longer seeks to subdivide the Shoreland Parcel bordering Curtis Pond.

### Discussion

Appellee Miller's motion for summary judgment seeks a determination that his property should be deemed to be located in the Village Zoning District, which does not have a minimum lot size requirement, and that such a determination should be the basis for this Court granting final plan review approval in this de novo appeal. Appellant opposes Appellee's summary judgment motion, and in his own motion for summary judgment requests that the Court conclude, as a matter of law, that: 1) Appellee's property is located entirely in the Shoreland Zoning District, which has a minimum lot size of three acres, thereby resulting in a denial of

3

Appellee's proposed subdivision and 2) the Court estop Appellee from arguing that the easterly and westerly portions of his property are separate for zoning purposes, based upon Appellee's representations in support of his 2001 variance application.

Our starting point must be a recitation of the procedural rules governing the review of summary judgment requests. Such requests, when granted, remove the opportunity for a party to put on their best case at an evidentiary hearing. We are cautioned that summary judgment is appropriate only if the pleadings and other evidence "show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3); see In re Hildebrand, 2007 VT 5, ¶9 (2007). The party opposing summary judgment is entitled to "the benefit of all reasonable doubts and inferences." Montgomery v. Devoid, 2006 VT 127, ¶28. In that light, we consider the respective summary judgment requests that each party has presented.

## Applicable Zoning District

Appellee argues that the Main Parcel is part of the Village District, which does not contain a minimum lot size requirement. Since lot size is the only general basis Appellant asserts for this Court to conclude that Appellee's proposed subdivision is not in compliance with the Regulations, Appellee asserts that his subdivision must be approved as a matter of law. Appellant argues that the property is not in the Village District, but rather in the Shoreland District, which would require denial of the application because of the minimum lot size requirement for that district.

Regulations § 6.9 provides the standard by which subdivision applications are analyzed. It states that subdivisions must "conform to the Calais Town Plan, other provisions of these regulations, … and all other municipal, bylaws, ordinances and regulations currently in effect." Regulations § 6.2(C). The "Shoreland District" is defined in the Regulations as

> all land within 800 feet of the shoreline (mean water mark) of all lakes and ponds with a surface area of 20 acres or more (Bliss Pond, Curtis Pond, Nelson Pond …). District boundaries may vary, however, to reference physical landmarks such as roads or ridges (see the official *Calais Zoning District Map*). Lakes, ponds, and associated shoreland areas are valuable, irreplaceable ecological, recreational and aesthetic resources to the town. The intent of this district is to preserve these resources for existing and future generations, to protect water quality, to reduce pollution, and to prevent over development within shoreland areas.

4

Regulations Table 2.4(A).

This language, when read alone, suggests that our analysis should end here; there is no dispute that all of Appellee's property is within 800 feet of Curtis Pond, a body of water of more than twenty acres. But there is an exception to this general definition of what properties lie within the Shoreland District. Regulations Table 2.4(A) continues with the directive that "[p]roperty that does not border on the shoreline and that does not drain into the body of water . . . shall be considered part of the respective villages, and not zoned as shoreline." Id.

The language in this exception to the general rule of Regulations Table 2.4(A) is significant to this case because the Shoreland District contains a minimum lot size requirement of three acres. Regulations Table 2.4(E). The Village District contains no minimum lot size requirement. Regulations Table 2.1(E).

It is undisputed that Appellee's Main Parcel, the only parcel Appellee now proposes to subdivided, does not border Curtis Pond. Thus, the first requirement of the exception is satisfied by the now undisputed evidence. But the second requirement of the exception to the general rule that would place this property in the Shoreland District is the subject of a material factual dispute. Appellee asserts that nearly all of his Main Parcel slopes away from and therefore does not drain into Curtis Pond. Appellant does not dispute that a portion, perhaps even a majority of Appellee's Main Parcel, slopes away from the pond. However, Appellant asserts that a portion of the Main Parcel, while perhaps small, does slope towards Curtis Pond and therefore drains into it. From the facts represented, particularly when put in context by the site visit, it is apparent that the drainage issue is a disputed material fact. We therefore must decline to grant summary judgment to either party on the issue of whether the Main Parcel drains into Curtis Pond. We will therefore schedule a hearing on the merits of Appellee's application, where we will take evidence on the drainage issue, and will thereafter render a conclusion on this material fact.

**Collateral Estoppel**

Appellant requests that we conclude, as a matter of law, that Appellee's two parcels have merged. This legal conclusion would then require us to deny Appellee's subdivision application, Appellant asserts, because the property being subdivided would then include frontage on Curtis Pond, thereby negating the possibility of it being governed by the Village District regulations. In support of his request, Appellant asserts that the law estops Appellee from continuing to

5

represent his property as consisting of two separate parcels because Appellee argued in his 2001 application that the property was one property.

Collateral estoppel, or issue preclusion, bars the re-litigation of claims already fully adjudicated in a prior proceeding. Trickett v. Ochs, 2003 VT 91, ¶10 (citing In re Central Vermont Public Service Corp., 172 Vt. 14, 20 (2003). The doctrine applies when:

> (1) preclusion is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits; (4) there was a full and fair opportunity to litigate the issue in the prior action; and (5) applying preclusion is fair.

Trickett, 2003 VT 91 at ¶10.

Here, Appellant argues that Appellee should be estopped from representing that Parcel 1 and Parcel 2 are separate because he argued the opposite in his 2001 variance application to the ZBA. Appellee argues that collateral estoppel does not apply because his 2001 variance application involved different issues from the present application; he described his property as a 5.97± acre parcel only because he was the common owner of all of the lots; and also that in 2001, a different zoning scheme governed his property. We agree.

First, the 2001 variance application did not represent a "full and fair opportunity" to litigate the issue of whether Parcel 1 and Parcel 2 were in fact one property or two. Appellee simply filled out a form, entitled Application for a Zoning Permit, which was granted by the ZBA. There was no opportunity for both sides in this proceeding to raise arguments with respect to whether a merger had occurred and there was no specific finding by the ZBA on the issue of merger. Had the ZBA felt that the merger of the two parcels was of such importance to its granting of the 2001 variance, the ZBA could have conditioned the variance upon some act that would memorialize the merger of the two lots. There is no such condition in the ZBA's variance approval.

Further, the Court does not find that, by filling in a blank on a form asking for his property acreage, Appellee bound himself to a merger of his two parcels. In fact, Appellee's acreage representation appears to be nothing more than a representation as to how many total acres Appellee owned, in response to the prompt on the form, which is wholly unrelated to the legal issue of whether that total acreage included separate individual parcels.

Finally, Appellee raises the important fact that collateral estoppel does not apply because the Regulations were amended on March 7, 2006, after his 2001 variance application and before

6

his 2006 subdivision application. The policy underlying the doctrine of collateral estoppel, which is to prevent litigants from re-litigating the exact same issues in subsequent proceedings, does not apply when the law governing the relevant facts has changed. <u>DuPage Forklift Serv., Inc. v. Material Handling Serv., Inc.</u>, 744 N.E.2d 845, 850 (2nd Cir. 2001) (citing Restatement 2d of Judgments §28(2) (collateral estoppel doctrine does not apply when intervening change in "applicable legal context" occurs)). We therefore decline to rule, as a matter of law, that Appellee's two, non-abutting lots merged by operation of the ZBA's 2001 approval of Appellee's variance request.

<u>**Conclusion**</u>

For the reasons stated above, Appellant's motion for summary judgment is **DENIED.** Appellee's motion is **GRANTED** to the extent that we conclude, as a matter of law, that the parcel proposed for subdivision does not border the shoreline of Curtis Pond. Appellee's motion for summary judgment is **DENIED** on the issue of whether the parcel proposed to be subdivided drains into Curtis Pond.

A pre-trial conference will be scheduled before the Case Manager to discuss the scheduling of a merits hearing.

Done at Berlin, Vermont this 21st day of March, 2007.

_____
Thomas S. Durkin, Environmental Judge