## 37662. HERRIN et al. v. OPATUT et al.

GREGORY, Justice.

In October, 1977 the defendants purchased a 57-acre tract of "pasture" land in Atkinson County, with the intention of establishing an egg farm. Subsequently, 26 chicken layer houses were built and on March 15, 1979, 40,000 chickens were brought in. The defendants began transacting business under the trade name, "Frances Egg Farm." The record discloses that, at the time plaintiffs instituted this lawsuit, over 500,000 chickens were housed at the Frances Egg Farm.

In April, 1980, plaintiffs, primarily residents of the area surrounding the Frances Egg Farm, filed suit against the defendants, alleging that they are "plagued by flies and offensive odors" emanating from the Frances Egg Farm. Plaintiff "Guest Pond, Inc.", alleged that the defendants are draining wastes from their egg farm into plaintiff's pond, with result that many of the fish are dying. Plaintiffs prayed that the Frances Egg Farm be declared a nuisance and enjoined from further business activity.

Defendants denied that the flies created a problem, stating that they took elaborate precautions to kill all of the flies attracted to their operation, including daily use of a fly insecticide fogging system and fly bait placed "at strategic locations on the farm." Defendants subsequently filed a motion to dismiss on the ground that plaintiffs' claim is barred by Code Ann. §§ 72-107 and 72-108.

After an evidentiary hearing, the trial court granted defendants' motion to dismiss.

Plaintiffs appeal, alleging that the trial court erred in finding that their claim is barred by Code Ann. §§ 72-107 and 72-108. We agree and reverse.

(1) In 1980 the General Assembly enacted Code Ann. §§ 72-107 and 72-108. Code Ann. § 72-107 expresses the "legislative . . . declaration of policy" behind Code Ann. § 72-108. These statutes provide:

"It is the declared policy of the State to conserve and protect and

encourage the development and improvement of its agricultural land for the production of food and other agricultural products. When nonagricultural land uses extend into agricultural areas, agricultural operations often become the subject of nuisance suits. As a result, agricultural operations are sometimes forced to cease operations. Many others are discouraged from making investments in farm improvements. It is the purpose of this law [§§ 72-107, 72-108] to reduce the loss to the State of its agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance." Code Ann. § 72-107 (Ga. L. 1980, p. 1253).

"No agricultural or farming operation, place, establishment, or facility, or any of its appurtenances, or the operation thereof, shall be or shall become a nuisance, either public or private, as a result of changed conditions in or around the locality of such agricultural or farming operation, place, establishment, or facility if such agricultural or farming operation, place, establishment, or facility has been in operation for one year or more." Code Ann. § 72-108 (Ga. L. 1980, pp. 1253, 1254).

Defendants take the position that only two issues are relevant in determining whether Code Ann. § 72-108 applies to bar a nuisance action brought against an agricultural facility. First, they posit, the trial court must find that the challenged facility is an "agricultural or farming operation" within the meaning of the statute. Next the court must determine whether this facility has been in operation for one year prior to the institution of the lawsuit; if the court finds that the facility meets both requirements, Code Ann. § 72-108 provides that the operation may not be abated as a nuisance.

We cannot accept this expansive interpretation of the statute. We do agree with the defendants that the clear intent of the legislature, set out in Code Ann. § 72-107, is to "conserve and protect and encourage" the development of farm land and the agricultural resources of this state. However, the General Assembly chose to extend this protection to a limited, but increasingly occurring, situation, i.e., the extension of "nonagricultural land uses . . . into agricultural areas." Recognizing that the advent of what is commonly called "urban sprawl" into what have traditionally been agricultural areas often subjects agricultural operations to nuisance suits by the new landowners, the legislature undertook to protect certain existing agricultural facilities from such lawsuits. Code Ann. § 72-108 sets out the requirements which a farming operation must meet in order to be afforded this protection. Reducing Code Ann. § 72-108 to its most essential terms, we read it as providing that "[n]o agricultural . . . facility . . . shall be . . . a nuisance . . . as a result of changed conditions in the locality of such . . . facility . . . if [it] . . . has been in operation for

one year or more." In order for the statute to apply to protect a given agricultural facility, that facility must first show that it is or has become a nuisance "as a result of changed conditions in . . . the locality of [its] operation." To construe the meaning of this language, Code Ann. §§ 72-107 and 72-108 must be read together. Doing so, we conclude that "changed conditions in . . . the locality" of the facility refers solely to the extension of nonagricultural land uses, residential or otherwise, into existing agricultural areas. In arriving at this conclusion, we recognize that Code Ann. § 72-108 presupposes the challenged facility is operating in a manner that makes it a nuisance which, but for the statute, could be abated. While the facility is located in an isolated or largely agricultural area, however, it is likely that there will be few attempts to enjoin its operation. It is, as Code Ann. § 72-107 acknowledges, "[w]hen nonagricultural land uses extend into agricultural areas [that] agricultural operations often become the subject of nuisance suits." Thus, it is not a change in the nature of the facility itself which has caused the operation to become a nuisance, but changes in the uses of the surrounding land in ways that are incompatible with the existing agricultural facility: the newcomers then seek to enjoin the facility from doing what it has always done. Thus, the facility is or becomes a nuisance "as a result of changed conditions in or around the locality" of the agricultural facility. The legislature has chosen, as a matter of policy, to exempt the agricultural facility in this situation from being declared a nuisance *if* the facility has been in operation for one year prior to the "changed conditions . . . in the locality." Of course, that which may constitute a nuisance regardless of urban sprawl, such as polluting a stream, is never protected by the statute since such activity does not become a nuisance as a result of "changed conditions in the surrounding locality."

Defendants argue, however, that the legislature did not intend to restrict the application of Code Ann. § 72-108 to this singular situation. Rather, they urge that the legislature also intended to protect "changed conditions" or growth in the nature of the agricultural facility itself. By way of illustration they posit that land which has always been "agricultural in nature" (such as their pasture land) is protected by the statute when it is (1) "improved" in a manner consistent with its agricultural nature (e.g., developed into an egg farm), and (2) the "improvement" remains in effect for one year before a lawsuit is filed. Defendants insist that the pre-existing "agricultural nature" of their land and uninterrupted operation for one year entitles them to protection under Code Ann. § 72-108 regardless of whether they constructed their egg farm before or after nonagricultural uses had been made of the areas surrounding their

land. Taken to its logical conclusion, this line of reasoning would permit the construction of an agricultural facility on vacant land centered in a developed, urban area which, after operating for one year, could never be abated as a nuisance. Clearly, this is not what the legislature sought to protect against. Code Ann. § 72-107 states that the "purpose of this law" is to reduce the loss of agricultural resources by *"limiting the circumstances* under which agricultural operations may be deemed to be a nuisance." (Emphasis supplied.) The statute does not provide, as defendants suggest, that any agricultural facility which remains in operation for one year can thereafter never be abated as a nuisance.

What the statute requires is that the agricultural facility sought to be enjoined have been in existence at least one year prior to the change in conditions in the locality in order to receive protection. Therefore, in determining whether an agricultural facility is insulated under § 72-108 from abatement as a nuisance, the court must inquire (1) whether the operation is an "agricultural facility" within the meaning of the statute; (2) whether the nuisance action is being brought "as a result of changed conditions in the locality of the facility" and (3) whether the facility has been in operation for one year or more prior to the changed conditions in the surrounding locality.

In this case defendants' egg farm falls within the purview of Code Ann. § 5-2903, defining "poultry and poultry products" as agricultural commodities and is, thus, an agricultural facility. Turning to the question of whether this nuisance suit has arisen "as a result of changed conditions" in the locality surrounding defendants' egg farm, we note that the parties have stipulated that plaintiffs were making nonagricultural uses of their lands prior to the establishment of defendants' egg farm. Consequently, if defendants' facility is a nuisance, it is not so "as a result of changed conditions in the locality" within the meaning of Code Ann. § 72-108. Nor has defendants' egg farm been in operation for one year prior to the change in conditions in the surrounding locality. As noted above, it is clear that the "changed conditions in the . . . locality" surrounding defendants' egg farm occurred before construction of the egg farm began. Contrary to defendants' position, it is not significant that the egg farm remained in operation for one year prior to the institution of this lawsuit.

This is not a case where plaintiffs' nonagriculatural uses of their land have encroached upon defendants' existing egg farm. Nor, do we find that defendants' situation is one which the legislature intended to protect under Code Ann. § 72-108. Consequently, we hold that the trial court erred in finding that plaintiffs' complaint was barred by

this provision, and in granting defendants' motion to dismiss.

(2) Because of the result we reach in Division 1 we find it unnecessary to address plaintiffs' remaining enumerations of error.

*Judgment reversed. Jordan, C. J., Hill, P. J., Marshall, Clarke and Smith, JJ., concur.*

DECIDED SEPTEMBER 9, 1981.

*Blitch & Sutton, Berrien L. Sutton, Robert Sumner,* for appellants.

*Barrie L. Jones, M. L. Preston, Alston, Miller & Gaines, G. Conley Ingram, Michael A. Doyle, Steven M. Collins,* for appellees.