DAVID A. DURHAM, Plaintiff v. WILLIAM J. BRITT and JOHN EDWIN BARROW, Defendants

No. 948SC249

(Filed 6 December 1994)

**Agriculture § 44 (NCI4th)— change from turkey farm to hog production facility—right of neighbor to bring nuisance action**

The trial court erred by granting defendant summary judgment in plaintiff's nuisance action since N.C.G.S. § 106-701 does not compromise plaintiff's right to bring a nuisance lawsuit for interference with plaintiff's reasonable use and enjoyment of his property where defendant changes his agricultural operation from operating turkey houses to operating a hog production facility.

**Am Jur 2d, Nuisances §§ 154 et seq.**

**Keeping pigs as nuisance. 2 ALR3d 931.**

Appeal by plaintiff from order entered 26 August 1993 by Judge
W. Russell Duke in Wayne County Superior Court. Heard in the Court
of Appeals 25 October 1994.

*Tharrington, Smith & Hargrove, by Mark J. Prak and E. Hardy
Lewis, for plaintiff-appellant.*

*Baddour, Parker, Hine, & Wellons, by Philip A. Baddour, Jr.,
and Langston and Duncan, by W. Dortch Langston, Jr., for
defendant-appellee William J. Britt.*

JOHNSON, Judge.

The facts underlying this appeal are as follows: In 1979, plaintiff
David A. Durham and his wife built a house on State Road 1719 in
Wayne County. The house has served as their permanent residence
since that time. In 1988, plaintiff purchased approximately fifty acres
of real property located across the street from his residence. Plaintiff
purchased the property with the intention of developing it for resi-
dential purposes and as a location for his technical design and
machine fabrication business. Defendant William J. Britt owns certain
real property bordering the eastern border of plaintiff's newly
acquired property. When plaintiff purchased his real estate in August
1988, defendant Britt operated three turkey houses on his land and
currently operates a fourth. Defendant Britt's farm has been operated
as an agricultural operation since the mid-1960's.

On 4 December 1990, defendant Britt wrote plaintiff a letter
informing plaintiff of his intent to construct and operate a hog pro-
duction facility on his property and requesting access to the road
adjoining their respective properties for purposes relating to the hog
production facility. Plaintiff did not respond to this letter. Plaintiff
gave this letter to his surveyor who then submitted the letter along
with a proposed subdivision plat to the Wayne County Planning
Board. The subdivision plat was approved by the Planning Board in
December 1990 and subsequently recorded. As of 6 January 1992,
there had been no construction of homes in plaintiff's subdivision,
although street lights, paved streets and utilities had been installed.
Plaintiff sold four lots in the subdivision on 21 April 1993 and eight
more lots on 13 May 1993 to Real Estate Management Services, Inc.

DURHAM v. BRITT

[117 N.C. App. 250 (1994)]

On 20 August 1991, defendant Britt signed a Market Hog Production Agreement with Goldsboro Hog Farms, Inc. In this agreement, defendant Britt agreed to grow hogs on his property for compensation. Defendant Britt was to receive a shipment of hogs and grow them for three months. After three months, Goldsboro Hog Farms, Inc. would pick up the hogs. Defendant Britt expected to receive at least $40,000 a year from Goldsboro Hog Farms, Inc. In September 1991, defendant Britt received approval for a loan from Tarheel Farm Credit for over $140,000 for the purpose of constructing a hog production facility consisting of two buildings and a waste treatment lagoon. As collateral, defendant Britt pledged his entire fifty acre tract of farmland, the buildings to be constructed for the hog operation, the turkey facility already in operation, and all related equipment. Defendant Britt requested and received the assistance of the United States Department of Agriculture Soil Conservation Service in planning and constructing his facility. Before beginning construction of the facility, defendant Britt coordinated with the Wayne County Health Department and the Wayne County Planning Commission, and obtained all necessary permits.

On 2 January 1992, plaintiff filed a verified complaint in Wayne County Superior Court stating claims of common law nuisance and intentional interference with prospective business advantage against defendants Britt and John Edwin Barrow. That same day, the trial court granted plaintiff's motion for a temporary restraining order directing defendants to remove or cover certain signs relating to the facility and prohibiting defendants from operating the facility. On 4 January 1992, the court modified the temporary restraining order to allow commencement by defendant Britt of operations at his facility. Defendant Barrow appeared *pro se* and filed an answer on 13 January 1992; defendant Britt, through counsel, filed an answer and motion to dismiss on 15 January 1992. Defendant Britt's answer set forth as an affirmative defense that because defendant Britt's farm had been "operated as an agricultural operation since the mid 1960's," plaintiff's action for common law nuisance was barred under North Carolina General Statutes §§ 106-700 and 106-701 (Cum. Supp. 1993). Defendant Britt also asserted as an affirmative defense that his facility was in compliance with "a comprehensive federal program[,]" consisting of guidelines promulgated by the United States Department of Agriculture Soil Conservation Service, and that as a result, plaintiff's state law nuisance action was in conflict with federal law and preempted under the constitutional doctrine of supremacy of federal laws.

DURHAM v. BRITT

[117 N.C. App. 250 (1994)]

Plaintiff and defendant Britt conducted substantial discovery, and on 25 January 1993 defendant Britt filed a motion for summary judgment. This motion was heard and on 26 August 1993, the trial court granted defendant Britt's motion for summary judgment. Plaintiff filed timely notice of appeal to our Court. Defendant Barrow was not a party to the motion and resulting order from which plaintiff appeals. Although it appears that plaintiff's suit against defendant Barrow is still pending, we choose to address this appeal in our discretion. N.C.R. App. P. 2.

Plaintiff argues on appeal that the trial court committed reversible error by granting defendant Britt's motion for summary judgment in that a genuine issue of material fact exists with regard to each of plaintiff's claims. Plaintiff states that North Carolina General Statutes § 106-701 does not compromise plaintiff's right to bring a nuisance lawsuit for interference with plaintiff's reasonable use and enjoyment of his property as a result of odors and other conditions caused by defendant Britt's hog production facility.

As a preliminary matter, we note "[i]t is the public policy of North Carolina to encourage farming, farmers, and farmlands." *Baucom's Nursery Co. v. Mecklenburg Co.*, 62 N.C. App. 396, 398, 303 S.E.2d 236, 238 (1983). In furthering this public policy, North Carolina General Statutes § 106-700 states:

> It is the declared policy of the State to conserve and protect and encourage the development and improvement of its agricultural land and forestland for the production of food, fiber, and other products. When other land uses extend into agricultural and forest areas, agricultural and forestry operations often become the subject of nuisance suits. As a result, agricultural and forestry operations are sometimes forced to cease. Many others are discouraged from making investments in farm and forest improvements. It is the purpose of this Article to reduce the loss to the State of its agricultural and forestry resources by limiting the circumstances under which an agricultural or forestry operation may be deemed to be a nuisance.

North Carolina General Statutes § 106-701, the "right to farm" law which protects existing farming operations, states in pertinent part:

> **§ 106-701: When agricultural and forestry operation, etc., not constituted nuisance by changed conditions in locality.**
>
> (a) No agricultural or forestry operation or any of its appurtenances shall be or become a nuisance, private or public, by any

changed conditions in or about the locality thereof after the same has been in operation for more than one year, when such operation was not a nuisance at the time the operation began; provided, that the provisions of this subsection shall not apply whenever a nuisance results from the negligent or improper operation of any such agricultural or forestry operation or its appurtenances.

(b) For the purposes of this Article, "agricultural operation" includes, without limitation, any facility for the production for commercial purposes of crops, livestock, poultry, livestock products, or poultry products.

Notwithstanding our State's public policy regarding "farming, farmers, and farmlands[,]" the question presented in the instant case is whether the change in the nature of the agricultural use of the land in question, from the operation of turkey houses to the operation of a hog production facility, is included in North Carolina General Statutes § 106-701 so as to continue to be "not constituted [a] nuisance." This is an issue of first impression in our State.

Plaintiff argues that North Carolina General Statutes § 106-701 does not apply to this case because "plaintiff did not 'come to the nuisance[,]'" but, rather, defendant Britt "imposed the nuisance upon plaintiff" because "[n]o nuisance existed until defendant Britt fundamentally changed the nature of the agricultural activity occurring on his property by constructing a high volume commercial swine facility." Plaintiff argues that "[d]efendant Britt would have this [C]ourt read the statute as meaning that, once he has conducted an agricultural operation on his property for a period in excess of one year, thereafter he may conduct any agricultural activity regardless of its scope and impact on surrounding neighbors, and the neighbors may not be heard to complain."

We find plaintiff's argument persuasive. We observe the wording of North Carolina General Statutes § 106-701, that "[f]or the purposes of this Article, 'agricultural operation' includes, *without limitation, any facility* for the production for commercial purposes of crops, livestock, poultry, livestock products, or poultry products[.]" (Emphasis added.) We believe the legislature intended this statute to cover any agricultural operation, without limitation, when the operation was initially begun. However, we do not believe the legislature intended North Carolina General Statutes § 106-701 to cover situations in which a party *fundamentally changes the nature of the agricultural activity* which had theretofore been covered under the

statute. For example, a fundamental change could consist of a significant change in the type of agricultural operation, or a significant change in the hours of the agricultural operation. *Compare* Ind. Code. Ann. § 34-1-52-4 (Burns 1986). Certainly, in the instant case, a fundamental change has occurred where defendant, who previously operated turkey houses, has decided to change his farming operation to that of a hog production facility. Therefore, we find the trial court committed reversible error by granting defendant Britt's motion for summary judgment in that North Carolina General Statutes § 106-701 does not compromise plaintiff's right to bring a nuisance lawsuit for interference with plaintiff's reasonable use and enjoyment of his property as a result of odors and other conditions caused by defendant Britt's hog production facility.

We find defendant's argument that defendant's compliance with the provisions of the Federal Watershed Protection and Flood Prevention Act serves as a bar to plaintiff's nuisance claim by virtue of the Supremacy Clause of the United States Constitution without merit. This Act does not specifically preempt or conflict with state law and therefore has no effect on plaintiff's common law right to bring this nuisance claim.

We find the trial court erred in granting defendant Britt's motion for summary judgment. The decision of the trial court is reversed.

Reversed and remanded.

Judges MARTIN and THOMPSON concur.