# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*Toftoy v. Rosenwinkel*, 2012 IL 113569

| | |
|---|---|
| Caption in Supreme Court: | ROGER TOFTOY *et al.*, Appellees, v. KEN ROSENWINKEL *et al.*, Appellants. |
| Docket No. | 113569 |
| Filed | November 29, 2012 |
| Rehearing denied | January 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiffs who acquired an historic but unoccupied farmhouse, demolished it, and built a new home were not entitled to a nuisance injunction where they complained of flies from a cattle farm across the road which had been in operation since six years before their acquisition—Farm Nuisance Suit Act. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kendall County, the Hon. Linda S. Abrahamson, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment reversed.<br>Cause remanded. |

Counsel on
Appeal

Kevin Quinn Butler, Cornelius E. McKnight, Stanley A. Kitzinger, Bernard A. Pravdic and Courtney A. Adair, of McKnight, Kitzinger & Pravdic, L.L.C., of Chicago, for appellants.

Frederick E. Roth, of Naperville, for appellees.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1 At issue in this case is whether the Farm Nuisance Suit Act (740 ILCS 70/1 *et seq.* (West 2006)) bars the plaintiffs' nuisance lawsuit against a neighboring cattle farm where the plaintiffs acquired their property after the cattle farm had been in operation for more than a year. The appellate court held that the suit was not barred. 2011 IL App (2d) 100565. For the reasons that follow, we reverse the judgment of the appellate court.

¶ 2                                        Background

¶ 3 In March of 1991, the defendants, Ken Rosenwinkel and the Rosenwinkel Family Partnership, L.L.C., purchased 160 acres of farmland in rural Kendall County. Across the street from defendants' farm, on a 120-acre plot of farmland owned by Clarence Toftoy, was a farmhouse that was at least 100 years old. The farmhouse was occupied by a tenant who had been in the home since 1985.

¶ 4 In December of 1991, the tenant left the farmhouse. No other tenant moved in. In March of the following year, defendants began using their property as a cattle farm.

¶ 5 In 1998, Clarence Toftoy divided his property and gave 1.83 acres to his son and daughter-in-law, plaintiffs Roger and Bobbie Toftoy. The 1.83 acres included the land where the old farmhouse was located. Prior to the transfer, plaintiffs tore down the farmhouse and began construction of a new home on the same spot. Construction was then delayed for several years, in part, because Bobbie was not certain she wanted to live across the street from a cattle farm. Plaintiffs eventually moved into their completed home in 2004.

¶ 6 In August of 2007 plaintiffs filed the instant lawsuit against defendants. In their complaint, plaintiffs alleged that defendants' cattle farm was generating large numbers of flies that were interfering with plaintiffs' use and enjoyment of their property, and that the flies constituted a nuisance for which defendants were legally liable. Plaintiffs sought injunctive relief to abate the flies. Plaintiffs did not allege that defendants were negligent in the operation of their farm.

¶ 7 Defendants moved for summary judgment, arguing that section 3 of the Farm Nuisance

Suit Act (Act) (740 ILCS 70/3 (West 2006)) barred plaintiffs' nuisance suit. That section states that no farm "shall be or become a private or public nuisance because of any changed conditions in the surrounding area" when the farm has been in existence for one year and was not a nuisance at the time it began operations. Defendants argued that plaintiffs' acquisition and occupation of their property were "changed conditions in the surrounding area" that gave rise to plaintiffs' nuisance suit, that these changes occurred after defendants' cattle operation had been in existence for more than a year and, thus, that defendants were exempt from nuisance liability under the Act.

¶ 8    The circuit court of Kendall County disagreed and denied defendants' motion. The circuit court noted that the manner in which plaintiffs' land was used had not changed since the time of the old farmhouse, stating "there is a new house where there always was a farmhouse—only with a new owner." Because the way in which plaintiffs' land was being used had not changed, the trial court concluded that there was no "changed condition" that had given rise to plaintiff's nuisance action and, thus, defendants were not entitled to relief under the Act as a matter of law.

¶ 9    At trial, plaintiffs presented expert testimony that there were an excessive number of flies on plaintiffs' property and that they were emanating from defendants' property. Plaintiffs also testified that the flies substantially interfered with the use and enjoyment of their home, making it impossible at times to engage in outdoor activities. At the conclusion of the trial, the circuit court entered judgment in favor of plaintiffs and ordered defendants to take remedial measures, including removal of moist bedding and manure, to reduce the number of flies.

¶ 10   The appellate court, with one justice dissenting, affirmed. With respect to section 3 of the Act, the appellate court held that the phrase "shall be or become a *** nuisance because of any changed conditions" indicates that, for the Act to apply, the changed conditions must be the reason the farm becomes a nuisance. Thus, according to the appellate court, "section 3 may not be invoked merely for 'any changed conditions.' Rather, the conditions must alter the character of the surrounding area such that, where the farm was not a nuisance when it began operation, it is transformed into a nuisance by the changed conditions." 2011 IL App (2d) 100565, ¶ 36. Applying that rule, the appellate court held that plaintiffs' acquisition and occupation of their land "did not alter the character of the area such that the cattle operation, which previously had not been a nuisance, thereby became a nuisance." *Id.* ¶ 37. Therefore, the Act did not bar plaintiffs' suit.

¶ 11   With respect to the merits of plaintiffs' nuisance claim, the appellate court affirmed the judgment of the circuit court. However, the appellate court vacated the circuit court's remedy, holding that the injunctive relief awarded by the circuit court was vague and overly broad.

¶ 12   We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 13                                            Analysis
¶ 14   Defendants' sole argument on appeal is that the appellate court misconstrued section 3

of the Act. Our review of this issue is *de novo*. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 50.

¶ 15    The Act is a "right-to-farm" law. With variations, such laws exist in all 50 states. *Shore v. Maple Lane Farms, LLC*, 2012 WL 1245606, *10 (Tenn. Ct. App. Apr. 11, 2012) (collecting statutes). The legislative policy behind the Act is stated in section 1:

>      "§ 1. It is the declared policy of the state to conserve and protect and encourage the development and improvement of its agricultural land for the production of food and other agricultural products. When nonagricultural land uses extend into agricultural areas, farms often become the subject of nuisance suits. As a result, farms are sometimes forced to cease operations. Many others are discouraged from making investments in farm improvements. It is the purpose of this Act to reduce the loss to the State of its agricultural resources by limiting the circumstances under which farming operations may be deemed to be a nuisance." 740 ILCS 70/1 (West 2006).

By reducing the incidence of nuisance suits, section 3 of the Act is intended to reduce the cost of farming and help prevent the loss of farmland. Section 3 provides:

>      "§ 3. No farm or any of its appurtenances shall be or become a private or public nuisance because of any changed conditions in the surrounding area occurring after the farm has been in operation for more than one year, when such farm was not a nuisance at the time it began operation, provided, that the provisions of this Section shall not apply whenever a nuisance results from the negligent or improper operation of any farm or its appurtenances." 740 ILCS 70/3 (West 2006).

¶ 16    As they did in the lower courts, defendants emphasize that section 3 refers to "any" changed conditions that may give rise to a nuisance action. This, according to defendants, indicates that the statute should be given a broad interpretation that encompasses the changes that occurred here and, thus, bars plaintiffs' suit.

¶ 17    Plaintiffs, in contrast, focus on the fact that section 3 applies only if the alleged changed conditions are ones that cause the farm "to be or become a private or public nuisance." According to plaintiffs, the word "nuisance" in section 3 refers simply to a nontrespassory invasion of another's interest in the private use and enjoyment of land. See Restatement (Second) of Torts § 821D (1979). Plaintiffs maintain that, in this case, there was an invasion and interference with the private use of land from the time defendants began their cattle operation because there was always a house on the property at issue. The existence of the old farmhouse, even when unoccupied, meant that a nuisance action was always possible. In this sense, according to plaintiffs, defendants' cattle farm did not "become a nuisance" because of "any changed conditions" in the surrounding area brought about by plaintiffs. Rather, the flies were a nuisance from the onset of the cattle operations.

¶ 18    Although plaintiffs themselves do not do so, their argument may be expressed in terms of the common law doctrine of coming to the nuisance. The term "coming to the nuisance" refers to those instances where a plaintiff either acquires his land or improves it after the defendant has already begun the nuisance generating activity. Restatement (Second) of Torts § 840D (1979). At common law, a plaintiff who came to the nuisance would not be barred

-4-

from pursuing a nuisance action, but the fact that the land was acquired or improved after the nuisance generating activity began would be a factor in determining whether the nuisance was actionable. See *Oehler v. Levy*, 234 Ill. 595 (1908).

¶ 19    Plaintiffs maintain, in essence, that section of 3 the Act is referring to only one type of coming to the nuisance—where the plaintiff's land is developed or altered after the nuisance-generating activity has begun. Thus, for example, if a cattle farm opens across the street from a plot of land containing crops, there is no nuisance because the use and enjoyment of a field of crops is not affected by flies. If, however, the owner of the crops removes them and develops the land with a home, a nuisance is created. In the words of section 3, the cattle farm "becomes a nuisance because of a changed condition in the surrounding area." Plaintiffs contend, in effect, that they never came to the nuisance for purposes of section 3 because, while their land changed ownership, it was always developed with a home. Therefore, according to plaintiffs, section 3 does not apply. We disagree.

¶ 20    In legal usage, the word "nuisance" has been employed in three different senses:

> "(1). It is often used to denote human activity or a physical condition that is harmful or annoying to others. Thus it is often said that indecent conduct or a rubbish heap or the smoking chimney of a factory is a nuisance.
>
> (2). It is often used to denote the harm caused by the human conduct or physical condition described in the first meaning. Thus it may be said that the annoyance caused by loud noises or by objectionable odors is a nuisance to the person affected by them.
>
> When the word is used in either of these two senses it does not necessarily connote tort liability. The courts that use the word in either sense will often proceed to discuss whether the particular 'nuisance' is actionable and may conclude that it is not.
>
> (3). Often, however, the term has been used to denote both the conduct or condition and the resulting harm with the addition of the legal liability that arises from the combination of the two. Thus the courts may say that a person is maintaining a nuisance, meaning that he is engaged in an activity or is creating a condition that is harmful or annoying to others and for which he is legally liable ***." Restatement (Second) of Torts § 821A cmt. b, at 85-86 (1979).

Section 3 of the Act bars certain nuisance lawsuits. As used in that provision, the word "nuisance" necessarily is being used in the third sense described above, *i.e.*, an action for which a farm owner would face legal liability. Liability for a private nuisance, in turn, exists "only to those who have property rights and privileges in respect to the use and enjoyment of the land affected." Restatement (Second) of Torts § 821E (1979). *Cf. City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 366 (2004) (noting that an action for *public* nuisance may lie even though neither the plaintiff nor the defendant acts in the exercise of private property rights).

¶ 21    In this case, plaintiffs' acquisition of ownership created the legally protected interest in which the plaintiffs are claiming interference. In other words, defendants' farm could not "become a nuisance" to plaintiffs until they acquired their property in 1998. The change in

ownership was a "changed condition" that gave rise to plaintiffs' nuisance action. In this way, section 3 codifies, and makes a bar to suit, the entirety of the coming to the nuisance doctrine. See, *e.g.*, *Swedenberg v. Phillips*, 562 So. 2d 170, 172 (Ala. 1990) (noting that "the plaintiffs' coming to the land next door" would constitute a "change in the surrounding locality" for purposes of the state's right to farm act); *Guth v. Tazewell County*, ___ F.3d ___, ___, 2012 WL 4901159, *2 (7th Cir. Oct. 17, 2012) (the Act "alters the common law's rejection of the defense of 'coming to the nuisance' by insulating farmers against nuisance suits after a farm has been in operation for a year—but with exceptions"); *Shore v. Maple Lane Farms, LLC*, 2012 WL 1245606, *10 (Tenn. Ct. App. Apr. 11, 2012) ("right-to-farm laws are essentially a codification of the common law defense of 'coming to the nuisance' "); Neil D. Hamilton, *Right-to-Farm Laws Reconsidered: Ten Reasons Why Legislative Efforts to Resolve Agricultural Nuisances May Be Ineffective*, 3 Drake J. Agric. L. 103, 104 (1998); Margaret Rosso Grossman & Thomas G. Fischer, *Protecting the Right to Farm: Statutory Limits on Nuisance Actions Against the Farmer*, 1983 Wis. L. Rev. 95, 97; Randall Wayne Hanna, *"Right to Farm" Statutes—The Newest Tool in Agricultural Land Preservation*, 10 Fla. St. U. L. Rev. 415, 430 (1982).

¶ 22    Plaintiffs in this case did not acquire their property rights in their land until 1998, six years after defendants' cattle farm began operating, and well beyond the one-year limitation contained in section 3. Plaintiffs came to the nuisance and, under section 3 of the Act, are barred from filing a nuisance suit.

¶ 23                                              Conclusion

¶ 24    For the foregoing reasons, the judgments of the appellate court and circuit courts are reversed. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 25    Appellate court judgment reversed.

¶ 26    Circuit court judgment reversed.

¶ 27    Cause remanded.