# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *Village of LaFayette v. Brown*, 2015 IL App (3d) 130445

</div>

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF LaFAYETTE, an Illinois Municipal Corporation, Plaintiff-Appellee, v. JEROD A. BROWN and DANA M. BROWN, Defendants-Appellants. |
| District & No. | Third District<br>Docket No. 3-13-0445 |
| Filed | February 25, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff village's ordinance declaring commercial farming within the village limits a nuisance was preempted by the Farm Nuisance Suit Act, since municipalities may not adopt ordinances that infringe on the spirit of the state law or are repugnant to the general policy of the state, the Act mandates that a farm shall not be deemed a nuisance if it satisfies the Act's requirements, and the ordinance has no exceptions for farm operations that satisfy the elements of the Act. |
| Decision Under Review | Appeal from the Circuit Court of Stark County, No. 12-CH-11; the Hon. Scott A. Shore, Judge, presiding. |
| Judgment | Reversed; injunction vacated. |
| Counsel on Appeal | Colby G. Hathaway and Justin M. Raver (argued), both of Barash & Everett, LLC, of Kewanee, for appellants.<br><br>David L. Cover (argued), of Cover, Evans & Fricke, LLP, of Peoria, for appellee. |

| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Holdridge specially concurred, with opinion.
Justice Lytton dissented, with opinion. |

**OPINION**

¶ 1    In April 2012, the Village of LaFayette (Village) enacted ordinance No. 420, which declared commercial farming within the boundaries of the Village to be a nuisance. LaFayette Ordinance No. 420 (eff. Apr. 2, 2012). Shortly thereafter, the Village brought an action against defendants, Jerod and Dana Brown, seeking conviction for a violation of the ordinance and to enjoin the defendants from further commercial farming on the property.

¶ 2    Following a bench trial in the circuit court of Stark County, the court found defendants not guilty of violating the ordinance as the Village failed to prove the element of notice. The trial court did, however, issue an injunction prohibiting further commercial farming on the property.

¶ 3    Defendants appeal, arguing that the Farm Nuisance Suit Act (740 ILCS 70/1 (West 2012)) preempts the Village's ordinance No. 420, that application of the Farm Nuisance Suit Act precludes enforcement of the ordinance against defendants, and that the ordinance is an unreasonable and, therefore, unconstitutional exercise of the Village's authority.

¶ 4    We reverse.

¶ 5                                    BACKGROUND

¶ 6    The Village is a municipal corporation with a population of approximately 230 located in Stark County, Illinois. Defendants purchased the 57-acre farm in question at public auction on June 27, 2011. Six of those acres lie within the Village's boundaries.

¶ 7    Immediately prior to the sale to defendants in 2011, the property was known as LaFayette Home Nursery, Inc., operating commercially as a tree and prairie grass nursery in and around the Village from 1979 until it declared bankruptcy and the bank foreclosed upon it. Within its day-to-day operations, the nursery used pesticides, fertilizers, and heavy equipment. After the nursery's foreclosure and leading up to its sale, some of the owners and employees remained working, with all proceeds going to the bank.

¶ 8    After purchasing the property, defendants removed the trees, leveled off the property, and began preparing the soil for growing corn and soybeans. Prior to purchasing the Stark County property, Jerod Brown farmed commercially for 16 growing seasons. In that time, the Environmental Protection Agency never cited defendants for a violation. No one disputes that defendants operated their farm according to the standard practices of the industry.

¶ 9    On April 2, 2012, approximately nine months after defendants, residents of neighboring Henry County, purchased the property, the Village enacted ordinance No. 420. Ordinance No. 420 expanded ordinance No. 378, which prohibited the keeping of farm animals or livestock within the Village. LaFayette Ordinance No. 378 (eff. Mar. 6, 2000). Ordinance

No. 420 expanded the definition of nuisances within the Village to include engaging "in any commercial farming for the production and harvesting of any agricultural or horticultural products on any private or public property within the Village of LaFayette." LaFayette Ordinance No. 420 (eff. Apr. 2, 2012).

¶ 10   On May 22, 2012, during the first growing season since having purchased the property, defendants planted their first corn crop. On June 1, 2012, the Village sent defendants a notice to abate, claiming that defendants were creating a nuisance by being in violation of the newly enacted ordinance.

¶ 11   On June 6, 2012, the Village filed a complaint against defendants, seeking both a penalty for violation of the ordinance and an injunction against continued commercial farming. On March 19, 2013, the parties filed pretrial briefs outlining their positions, and the trial court held a half-day bench trial.

¶ 12   On April 5, 2013, the trial court entered a judgment order acquitting defendants of the alleged ordinance violation based on a lack of notice. However, on April 26, 2013, the court issued an injunction, enjoining defendants from engaging in any commercial farming on their property within the Village. The court specifically found that the protections of the Act did not apply. It noted that "[a]lthough Defendants' property was in continuous use for agricultural commercial purposes, the Village has been a municipal corporation far longer, and has been obligated to serve the public welfare of its residents since its incorporation, which purposes have not changed."

¶ 13   The trial court denied the defendants' motion for reconsideration. Defendants appeal the injunction. We reverse and vacate the injunction.

¶ 14                                      ANALYSIS

¶ 15   On appeal, defendants argue that the application of the Farm Nuisance Suit Act (the Act) (740 ILCS 70/1 (West 2012)) precludes enforcement of the ordinance against them; that the Act preempts ordinance No. 420. In the alternative, the defendants argue that the ordinance is arbitrary and an unreasonable exercise of the Village's authority and is, therefore, unconstitutional. We need not address the constitutionality of the ordinance as we find that, on the facts of this case, the Act preempts the ordinance.

¶ 16   Ordinance No. 420 regulates nuisances within the Village and, in relevant part, provides as follows:

> "SECTION 1: Paragraph 13 of Section II. Nuisances include, but are not limited to, the following: shall be Amended to read as follows:
>
> 13. *** or to engage in any commercial farming for the production and harvesting of any agricultural or horticultural products on any private or public property within the Village of LaFayette." LaFayette Ordinance No. 420 (eff. Apr. 2, 2012).

While the Village clearly has the authority to enact a nuisance ordinance (see 65 ILCS 5/11-60-2 (West 2012)) (providing that the "corporate authorities of each municipality may define, prevent, and abate nuisances"), the legislature has limited this authority in certain instances. Passed in 1981, the Act states that "[i]t is the declared policy of the state to conserve and protect and encourage the development and improvement of its agricultural land for the production of food and other agricultural products." 740 ILCS 70/1 (West 2012). Thus, the purpose of the Act is "to reduce the loss to the State of its agricultural resources by

*limiting* the circumstances under which farming operations may be deemed to be a nuisance." (Emphasis added.) *Id*.

¶ 17   Section 2 of the Act defines a farm as:

"§ 2. The term 'farm' as used in this Act means any parcel of land used for the growing and harvesting of crops; for the feeding, breeding and management of livestock; for dairying or for any other agricultural or horticultural use or combination thereof." 740 ILCS 70/2 (West 2012).

¶ 18   Finally, and at issue in the case at bar, section 3 of the Act provides:

"§ 3. No farm or any of its appurtenances shall be or become a private or public nuisance because of any changed conditions in the surrounding area occurring after the farm has been in operation for more than one year, when such farm was not a nuisance at the time it began operation, provided, that the provisions of this Section shall not apply whenever a nuisance results from the negligent or improper operation of any farm or its appurtenances." 740 ILCS 70/3 (West 2012).

¶ 19   The Village contends that the trial court properly found that section 3 of the Act was not applicable to defendants, as defendants failed to prove "any changed conditions in the surrounding area." The mere enactment of an ordinance, the Village argues, does not constitute changed conditions as there was no encroaching residential use of land as contemplated by the statute. We disagree and find the trial court misinterpreted both the Act and the holding of *Toftoy v. Rosenwinkel*, 2012 IL 113569.

¶ 20   In *Toftoy*, the defendants owned 160 acres of farmland in rural Illinois. *Id*. ¶ 3. Originally, Clarence Toftoy owned 120 acres of farmland across the road from defendants upon which an over 100-year-old farmhouse sat. *Id*. While the farmhouse across the road was unoccupied, the defendants began using their property to raise cattle. *Id*. ¶ 4. Several years later, Clarence tore down the historic farmhouse and transferred ownership of the 1.83 acres upon which it sat to his son and daughter-in-law, plaintiffs Roger and Bobbie Toftoy. *Id*. ¶ 5. Plaintiffs began construction of a new home. *Id*. Several years after this, plaintiffs filed a nuisance action against the defendants' farm operation, and defendants responded with a motion for summary judgment based upon the Act. *Id*. ¶¶ 6-7. The trial court denied the motion, and the case proceeded to trial. *Id*. ¶ 8. The trial court entered judgment in favor of plaintiffs and ordered defendants to take remedial measures to reduce the nuisance caused by the cattle farming operation. *Id*. ¶ 9. The appellate court affirmed, finding that " 'the conditions must alter the character of the surrounding area such that, where the farm was not a nuisance when it began operation, it is transformed into a nuisance by the changed conditions.' " *Id*. ¶ 10 (quoting *Toftoy v. Rosenwinkel*, 2011 IL App (2d) 100565, ¶ 36). Applying that analysis, "the appellate court held that plaintiffs' acquisition and occupation of their land 'did not alter the character of the area such that the cattle operation, which previously had not been a nuisance, thereby became a nuisance.' " *Id*. (quoting *Toftoy v. Rosenwinkel*, 2011 IL App (2d) 100565, ¶ 37).

¶ 21   Our supreme court reversed, finding that "plaintiffs' acquisition of ownership created the legally protected interest in which the plaintiffs are claiming interference." *Id*. ¶ 21. "In other words, defendants' farm could not 'become a nuisance' to plaintiffs until they acquired their property in 1998. The change in ownership was a 'changed condition' that gave rise to plaintiffs' nuisance action." *Id*. The court went on to note that plaintiffs did not acquire their land until 1998, "six years after defendants' cattle farm began operating, and well beyond the

one-year limitation contained in section 3. Plaintiffs came to the nuisance and, under section 3 of the Act, are barred from filing a nuisance suit." *Id*. ¶ 22.

¶ 22    Following *Toftoy*, if a change in ownership (*i.e.*, a change in legal rights) constitutes a "changed condition" to bar a nuisance action, so, too, does a change in the local ordinance. Here, the trial court found that, "[a]lthough Defendants' property was in continuous use for agricultural commercial purposes, the Village has been a municipal corporation far longer, and has been obligated to serve the public welfare of its residents ***, which purposes have not changed." That leads to the age-old legal question: so what? In *Toftoy*, the plaintiffs' land had continually been used as a farmstead. The changed condition was the change in ownership, which occurred after the defendants' cattle farm had been in operation for well over a year. Similarly, the Village has continually operated as a municipality obligated to serve the public welfare of residents. The changed conditions were the sensibilities of the residents of the Village, or at least the Village board, which provoked it to label defendants' farm as a nuisance. Something provoked the Village, which has been around since the nineteenth century, to pass the ordinance months after the farm was purchased by Henry County residents.

¶ 23    We further take issue with the trial court's finding that "[e]ven accepting that the Village's enforcement of its ordinance can be equated with a private entity's suit to abate a nuisance, the protection of the Act does not extend to a business that locates within a previously established residential use." The defendants' land has, at all relevant times, been used for commercial agricultural/horticultural purposes and has, likewise, been located in the Village next to residential land. It did not relocate; the crop raised at the commercial farming operation simply changed. Obviously, some nearby residents did not like the new crop and all that goes with planting and harvesting it; the Village enacted the ordinance. To, again, apply the rationale of *Toftoy*, defendants' commercial farming endeavors could not "become a nuisance" to the Village until the Village amended the ordinance. That change to the ordinance was a "changed condition" that gave rise to the Village's nuisance action. See *Toftoy*, 2012 IL 113569, ¶ 21.

¶ 24    Under the Act, the change in legal ownership is not dispositive. We believe that the result would have been the same in *Toftoy* had plaintiffs lived on the property from the beginning and then waited six years to file their nuisance action.

¶ 25    The Village also argues that the defendants' corn/soybean operation was not a mere continuation of the prior tree nursery and that there was a substantial gap between the tree nursery operation and defendants' commercial farming operation. According to the Village, a change in the type of farming operations occurring after the farm has been in operation for more than one year prevents the application of the Act. If the Act was intended to be implicated when there is a cessation or interruption of farming operations, it posits, then the Act would expressly state the same.

¶ 26    In support, the Village cites to the Michigan Right to Farm Act, which provides a farm that is otherwise covered by the Right to Farm Act shall not be found to be a nuisance because of temporary cessation or interruption of farming. See Mich. Comp. Laws Ann. § 286.473(3)(b) (West 2012). The Village also directs our attention to *Kalkman v. Nedved*, 2013 IL App (3d) 120800, explaining that under the maxim *expressio unius est exclusio alterius* (the " 'expression of one thing is the exclusion of another' "), the court infers that when a statute lists the things to which it applies, the omissions should be

understood as exclusions. *Toftoy*, 2012 Il 113569, ¶ 22 (quoting *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (2004)).

¶ 27    We find this unpersuasive. The best indication of the legislature's intent is the plain language of the statute. *In re E.B.*, 231 Ill. 2d 459, 466 (2008). "[W]hen statutory language is plain and certain the court is not free to give it a different meaning." *In re Estate of Hoehn*, 234 Ill. App. 3d 627, 629 (1992). Additionally, a court may not depart from the plain statutory language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *In re Estate of Ellis*, 236 Ill. 2d 45, 51 (2009).

¶ 28    The plain language states that the purpose of the Act is to protect and conserve the development and improvement of agricultural land and limit, not expand, the circumstances under which farms can be considered nuisances. Unlike the Michigan Right to Farm Act cited by the Village, which lists changed circumstances to which the Act applies, our Act does not enumerate such a specific set of situations. We, therefore, decline to read the absence of language regarding a temporary cessation or interruption of farming as an exclusion, nor do we believe the fundamental rules of statutory interpretation allow us to do so. We also note that despite the Village's arguments to the contrary, the trial court did find that defendants' property was in continuous use for commercial agricultural purposes. Public policy further supports such a reading of the Act, as allowing a temporary cessation of farming operations to defeat application of the Act has the potential to drastically devalue farmland, especially land that might be tied up in either bankruptcy or foreclosure proceedings.

¶ 29    We find that the construction of the Act promoted by the Village would lead to an absurdity. Illinois is an agricultural state. The stated purpose of the Act is to "conserve and protect and encourage the development and improvement of its agricultural land for the production of food and other agricultural products" and "to reduce the loss to the State of its agricultural resources *by limiting the circumstances* under which farming operations may be deemed to be a nuisance." (Emphasis added.) 740 ILCS 70/1 (West 2012). The Village argues that while the statute bars declaring a farm a nuisance in the face of encroaching residential use of land, it does not bar declaring a farm a nuisance "just because we can." That is (under the Village's construction), the Act would bar enforcement of the ordinance if it was passed so that someone would build a house or two on a vacant lot across the road from the farm, but the Act would not protect the farm if no one wants to build a house on a vacant lot across the road from the farm. This would be an absurd result. As discussed below, the only change in conditions in *Toftoy* was the sensibilities of the occupant of the residential property across the road from the farm. It was residential property before the cattle farm began operation, and it was residential property when the suit to enjoin the farming operation was filed. The "change in circumstances" was that whoever owned the residential property at the time the farm started operation, and during its first year, did not object to the farm. More than one year later, the farm became occupied by a new owner who was not too keen on living across the road from a cattle farm.

¶ 30    Somehow the trial court thought it important that the Village had been a municipal corporation far longer than the farm had been in operation. First of all, we see nothing in the record that tells us what the property in question was used for prior to 1979, or what it was being used for at whatever time the Village incorporated. Most importantly, we find the trial court's observation regarding the relative longevity of the Village and the farm as totally

irrelevant to the issue. There is nothing on the face of the statute nor could we conjure up any logical reason to believe that the Act only protects farms from nuisance ordinances if the existence of the farm predated the municipality's incorporation. Under the Act, there are two relevant questions with respect to time: (1) was the farm a nuisance at the time it began operation? and (2) if not, and assuming it was properly operated, had it been in operation for more than one year when someone, either private or public, tried to shut it down using nuisance law? 740 ILCS 70/3 (West 2012).

¶ 31 The reality of life in downstate Illinois is that many, if not most, cities, towns, and villages have farms operating within their boundaries. We suspect that they continue to operate as farms because the owners have decided that crop production is the highest and best use of the land. Whether it is or not is not important. What is important is that the Act limits the ability of either an individual through private suit or a municipality through an ordinance to deprive the owner of the right to use the land to grow crops, either agricultural or horticultural.

¶ 32 The dissent argues that "the farm" in the statute refers to a farm operated by the same owner and growing the exact same crops. *Infra* ¶¶ 47-49. If this is so, what rational person would purchase a farm located within municipal limits, knowing that the village had one year to put the farm out of operation at its whim? Everyone knows what farm is at issue. By changing ownership and crop, it does not stop being "the" farm and become some other farm. This is not a situation where someone went from growing crops to creating a feedlot. As the special concurrence points out, the ordinance bars all farming.

¶ 33 The ordinance is preempted by the Act. "It is well established that municipalities may not adopt ordinances which infringe upon the spirit of the state law or are repugnant to the general policy of the state." *Village of Northfield v. BP America, Inc.*, 403 Ill. App. 3d 55, 58 (2010). A local ordinance which infringes upon the legislative intent of a state statute is preempted. The Act mandates that a farm shall not be deemed a nuisance if it satisfies the requirements of the Act. However, the ordinance labels all commercial farming a nuisance. The ordinance has no exception for farm operations that satisfy the elements of the Act. It is, therefore, preempted.

¶ 34 There may be ways to stop farming within the Village of LaFayette. Labeling an existing farm as a nuisance is not one of them. Accordingly, we find that the Farm Nuisance Suit Act applies and bars application of the ordinance to defendants' farming operations.

¶ 35          CONCLUSION

¶ 36 For the foregoing reasons, the judgment of the circuit court of Stark County is reversed and the injunction is vacated.

¶ 37 Reversed; injunction vacated.

¶ 38 JUSTICE HOLDRIDGE, specially concurring.

¶ 39 I agree that the Farm Nuisance Suit Act (the Act) (740 ILCS 70/1 *et seq.* (West 2012)) preempts the Village's ordinance No. 420. I write separately to clarify one aspect of the analysis that reviewing courts should apply in determining whether a particular agricultural or horticultural operation is protected under the Act. In my view, a change in the type or

character of farming operations may be relevant to this determination. As I interpret the statute, a plaintiff may state a claim for nuisance against a farm even if that farm has been in existence for more than one year so long as the alleged nuisance is caused by a change in the farming operations rather than any changed conditions in the area surrounding the farm. For example, if a plaintiff lives across the street from a row crop farm for 10 years without incident but the farm subsequently changes to a hog farm, the plaintiff may state a nuisance claim against the hog farm so long as the alleged nuisance stems from the hog farming operations and not from any change in the plaintiff's ownership or use of his land.

¶ 40    Courts in other jurisdictions have construed similar farm nuisance statutes in this manner. See, *e.g.*, *Flansburgh v. Coffey*, 370 N.W.2d 127, 130-31 (Neb. 1985) (holding that the Nebraska Right to Farm Act did not apply where the change at issue occurred on the defendant's farm rather than on other land in the vicinity of the farm); *Crea v. Crea*, 16 P.3d 922, 925 (Idaho 2000) (holding that defendant's expanded hog farm operations were not protected by the Idaho Right to Farm Act because the hog operation was alleged to be a nuisance "not because of changes in surrounding non-agricultural uses, but because of an expansion of the [farm] operation itself"); *Durham v. Britt*, 451 S.E.2d 1, 3-4 (N.C. Ct. App. 1994) (ruling that North Carolina's "right to farm" law did not apply to "situations in which a party *fundamentally changes the nature of the agricultural activity* which had theretofore been covered under the statute," and holding that a "fundamental change" occurred where the defendant, who previously operated turkey houses, changed his farming operation to a hog production facility (emphasis in original)).

¶ 41    This is not such a case. Although the farm at issue in this case changed from a tree nursery to a row crop farm, the Village does not allege that the nuisance was caused by this change in farming operations. Rather, the Village claims that the farm is a nuisance because it has passed ordinance No. 420, which declares *all* commercial farming within the Village to be a nuisance (regardless of the type or character of the farming). Thus, the Village alleges that the farm became a nuisance because of a change that occurred to the area surrounding the farm. Moreover, as Justice Schmidt notes, ordinance No. 420 labels all commercial farming a nuisance without including an exception for farming operations that are protected by the Act. Accordingly, the Act applies in this case, and ordinance No. 420 conflicts with and is preempted by the Act.


¶ 42    JUSTICE LYTTON, dissenting.

¶ 43    I disagree with the majority's conclusion that the Farm Nuisance Suit Act preempts the Village's ordinance. The Act does not apply in this case.

¶ 44    In interpreting statutes, like the Act, the cardinal rule is to ascertain and give effect to the legislature's intent, which is best indicated by the statute's plain language. *People v. Martin*, 2011 IL 109102, ¶ 21. Words and phrases that have well-defined meanings in common law are interpreted to have the same meanings when used in statutes. *CNB Bank & Trust, N.A. v. Rosentreter*, 2014 IL App (4th) 140141, ¶ 40.

¶ 45    Almost all states have right-to-farm laws similar to the Act. See *Guth v. Tazewell County*, 698 F.3d 580, 584 (7th Cir. 2012); *Tricket v. Ochs*, 2003 VT 91, ¶ 21, 176 Vt. 89, 838 A.2d 66. The purpose of such laws is to protect farmers from nuisance suits caused by the encroachment of nonagricultural neighbors moving to traditionally rural areas. *Tricket*, 2003 VT 91, ¶ 23 (citing 13 Neil E. Harl, Agricultural Law § 124.01, at 124-2 (1993)).

¶ 46      The Act codifies the "coming to the nuisance doctrine." *Toftoy v. Rosenwinkel*, 2012 IL 113569, ¶ 21. For the Act to apply, three requirements must be met: (1) the farm must be in operation for more than one year, (2) the farm must not have changed its operations, and (3) there must be changed conditions occurring in the area surrounding the farm. See 740 ILCS 70/3 (West 2012); *Herrin v. Opatut*, 281 S.E.2d 575, 578 (Ga. 1981); *Finlay v. Finlay*, 856 P.2d 183, 188 (Kan. Ct. App. 1993). All three requirements are necessary for application of the Act. See 740 ILCS 70/3 (West 2012); *Herrin*, 281 S.E.2d at 578; *Finlay*, 856 P.2d at 188.

¶ 47      None of the Act's requirements are met in this case. First, defendants owned the farm in question and operated it as a corn and soybean farm for less than 10 months before the Village filed its nuisance suit. Therefore, the one-year requirement is not met. The majority interprets the one-year requirement very loosely and finds that it is met as long as the land is used for commercial agricultural/horticultural purposes for more than one year. *Supra* ¶ 23. Such an interpretation of the Act ignores its plain language, which requires that "*the* farm has been in operation for more than one year." (Emphasis added.) 740 ILCS 70/3 (West 2012).

¶ 48      It is a principle of statutory construction that " 'the definite article "the" particularizes the subject which it precedes. *It is a word of limitation as opposed to the indefinite or generalizing force of "a" or "an." ' "* (Emphasis in original.) *Sibenaller v. Milschewski*, 379 Ill. App. 3d 717, 722 (2008) (quoting *Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969)). "The" is a restrictive term. *Id*. It is not synonymous with "any" and "is more nearly its antithesis." *Id*. at 721-22. Here, the Act requires that "the farm" be "in operation for more than one year." 740 ILCS 70/3 (West 2012). The majority's interpretation of the Act ignores the word "the" and replaces it with "a" or "any." I reject this construction of the statute. To satisfy the first requirement of the Act, the specific farm at issue, which in this case is defendants' corn and soybean farm, must be in operation for at least a year. See *Davis v. Taylor*, 132 P.3d 783, 785 (Wash. Ct. App. 2006) (state right-to-farm statute did not apply to cherry orchard even though property had been operated as a farm for many years where farm recently changed from apple orchard to cherry orchard). Because defendants' farm was in operation for less than a year when the Village passed its ordinance, the Act does not apply.

¶ 49      Similarly, the second requirement is not met because defendants' farm has changed operations. A right-to-farm statute is inapplicable where a change in use or operations has occurred on the agricultural land. See *Payne v. Skaar*, 900 P.2d 1352, 1355 (Idaho 1995) (cattle feedlot operation expanded); *Finlay*, 856 P.2d at 188 (hog operation expanded); *Davis*, 132 P.3d at 786 (apple orchard became cherry orchard); *Durham v. Britt*, 451 S.E.2d 1, 4 (N.C. Ct. App. 1994) (turkey housing operation became hog production facility). Here, before defendants purchased the property in question, it was operated as a nursery and tree farm. Defendants removed the trees, leveled the land, and now use the property as a corn and soybean farm. Because defendants have changed the use of the farm, the Act does not apply. See *Payne*, 900 P.2d at 1355; *Finlay*, 856 P.2d at 188; *Davis*, 132 P.3d at 786; *Durham*, 451 S.E.2d at 4.

¶ 50      Finally, there are no changed conditions in the area surrounding the farm, as required by the Act. The majority finds that the Village's change to the ordinance was a "changed condition" under the Act. *Supra* ¶ 23. I disagree. The plain language of the Act requires that the changed condition occur in the "surrounding area." 740 ILCS 70/3 (West 2012). Where the neighborhood surrounding the farm has remained substantially unchanged, a right-to-farm law does not apply. See *McVicars v. Christensen*, 320 P.3d 948, 953 (Idaho 2014); *Crea v. Crea*,

16 P.3d 922, 925 (Idaho 2000); *Payne*, 900 P.2d at 1355. Right-to-farm laws, including the Act, only apply where there has been a change in land use, ownership or occupancy in the area surrounding the farm. See *Toftoy*, 2012 IL 113569, ¶ 21; *Flansburgh v. Coffey*, 370 N.W.2d 127, 131 (Neb. 1985); *Cline v. Franklin Pork, Inc.*, 361 N.W.2d 566, 572 (Neb. 1985). Here, there was no such change. The only change that has occurred is the enactment of the ordinance; the land surrounding defendants' property has not changed.

¶ 51    The intent of the Act and other right-to-farm laws supports my conclusion that the Act does not apply in this case. The purpose of right-to-farm laws, like the Act, is to protect agricultural areas from nuisance suits arising out of "urban sprawl." *Buchanan v. Simplot Feeders Ltd. Partnership*, 952 P.2d 610, 612 (Wash. 1998); *Herrin*, 281 S.E.2d at 577. Thus, right-to-farm laws are not triggered unless there is an extension of nonagricultural land uses into existing agricultural areas. *Herrin*, 281 S.E.2d at 577; see also *Trickett*, 2003 VT 91, ¶ 32 (right-to-farm statute inapplicable where there is no "urban encroachment"). Here, where no new nonagricultural neighbor has moved to a traditionally agricultural area and attempted to put the surrounding farms out of business, the purpose of the Act is not accomplished. See *Toftoy*, 2012 IL 113569, ¶ 21.

¶ 52    I would find that the Act does not apply and does not preempt the Village's ordinance.