NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued April 11, 2013
Decided July 3, 2013

Before

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

| | |
|---|---|
| No. 12-3339 | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| RALPH DALZELL, SR., *et al.*, <br>     *Plaintiffs-Appellants*, | |
| *v.* | |
| COUNTRY VIEW FAMILY FARMS, LLC, *et al.*, <br>     *Defendants-Appellees*. | No. 1:09-cv-1567-WTL-MJD <br> William T. Lawrence, *Judge*. |

### Order

In 2005 Don Leis acquired agricultural property in Randolph County, Indiana. The farm grew corn and beans. By 2007 Leis and entities he controlled had converted the property to a pig farm with 2,800 hogs. Neighbors who objected to the stench filed this nuisance suit under the diversity jurisdiction. 28 U.S.C. §1332. The district court granted summary judgment for the defendants, ruling that the Indiana Right to Farm Act, Ind. Code §32-30-6-9, blocks their claim. 2012 U.S. Dist. LEXIS 130773 (S.D. Ind. Sept. 13, 2012).

Here is the text of §32-30-6-9:

(a) This section does not apply if a nuisance results from the negligent operation of an agricultural or industrial operation or its appurtenances.

(b) The general assembly declares that it is the policy of the state to conserve, protect, and encourage the development and improvement of its agricultural land for the production of food and other agricultural products. The general assembly finds that when nonagricultural land uses extend into agricultural areas, agricultural operations often become the subject of nuisance suits. As a result, agricultural operations are sometimes forced to cease operations, and many persons may be discouraged from making investments in farm improvements. It is the purpose of this section to reduce the loss to the state of its agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance.

(c) For purposes of this section, the continuity of an agricultural or industrial operation shall be considered to have been interrupted when the operation has been discontinued for more than one (1) year.

(d) An agricultural or industrial operation or any of its appurtenances is not and does not become a nuisance, private or public, by any changed conditions in the vicinity of the locality after the agricultural or industrial operation, as the case may be, has been in operation continuously on the locality for more than one (1) year if the following conditions exist:

   (1) There is no significant change in the type of operation. A significant change in the type of agricultural operation does not include the following:

      (A) The conversion from one type of agricultural operation to another type of agricultural operation.

      (B) A change in the ownership or size of the agricultural operation.

      (C) The:

         (i) enrollment; or

         (ii) reduction or cessation of participation;

      of the agricultural operation in a government program.

      (D) Adoption of new technology by the agricultural operation.

   (2) The operation would not have been a nuisance at the time the agricultural or industrial operation began on that locality.

Plaintiffs' main argument in the district court was that the conversion of the land from crops to a "concentrated animal feeding operation" (which is what Indiana's regulatory officials call the defendants' business) was a "significant change" for the purpose of paragraph (d)(1). The district court rejected this because subparagraph (d)(1)(A) says that a change from one type of agricultural operation to another is not "significant".

   Plaintiffs do not renew that argument on appeal. Instead they contend that the record does not show "any changed conditions in the vicinity of the locality after the agricultural … operation … has been in operation continuously" for a year, as subsection

(d) requires. Citing *Wendt v. Kerkhof*, 594 N.E.2d 795, 798 (Ind. App. 1992), and *TDM Farms, Inc. v. Wilhoite Family Farm LLC*, 969 N.E.2d 97 (Ind. App. 2012), plaintiffs maintain that the Act's function is to change the common-law rule that a person "coming to the nuisance" could sue to abate it. See also *Toftoy v. Rosenwinkel*, 2012 IL 113569 (Nov. 29, 2012) (same reading of the comparable statute in Illinois). They did not come to the pig farm, they observe; the pig farm came to them.

The problem with this argument—beside the fact that it was not made in the district court and has been forfeited—is that the land appears to have been in agricultural use since 1956, long before plaintiffs bought their parcels, if not earlier. The exact date is not in the record, nor does the record show whether the agricultural use has been interrupted for a year or more. That shortcoming may be attributable to plaintiffs' decision not to present this argument in the district court, but no matter. Plaintiffs make nothing of these details. Instead they say that "the agricultural … operation" for the purpose of subsection (d) means the pig farm, not the prior use of the land. That argument won't fly. Subsection (d) says "the agricultural operation", not "the *current* agricultural operation" or anything similar. Subparagraph (d)(1)(B) illustrates the difference by providing that a change in ownership or size is not "significant." If, as plaintiffs assert, a change in ownership restarts the clock for the purpose of subsection (d), then subparagraph (d)(1)(B) would be useless. So would subparagraph (d)(1)(A), which says that a change in the type of agricultural operation is not significant. We read these subparagraphs to show that subsection (d) as a whole starts the one-year clock from the time *any* agricultural use began on a parcel of land. Only a "significant" change starts a new clock.

Plaintiffs do not contend that a pig farm would have been a nuisance in the 1950s, before non-farmers moved to the vicinity. Thus paragraph (d)(2) does not help them. They pin their remaining hopes on subsection (a), which provides that the entire Act "does not apply if a nuisance results from the negligent operation of an agricultural … operation". They insist that defendants have operated their pig farm negligently.

The district judge wrote that "ample evidence" (when viewed favorably to plaintiffs) shows that the defendants operated several aspects of the pig farm negligently. His opinion (at *16) gives ten examples. But the judge added that the record would not permit a reasonable trier of fact to conclude that these shortcomings cause the stench that aggrieves plaintiffs. *Id*. at *16–21. The judge concluded that every farm with 2,800 hogs, no matter how well operated, emits odors that plaintiffs would find obnoxious.

Plaintiffs contend that the district judge erred because the Act lacks a causation requirement. We don't understand this. Here's subsection (a) again, with emphasis: the Act "does not apply if a nuisance *results from the negligent operation* of an agricultural … operation". Unless the nuisance "results from" the negligence, and not just from the agricultural operation, the Act applies and defeats plaintiffs' claim. See *Lindsey v. DeGroot*, 898 N.E.2d 1251 (Ind. App. 2009). What's more, causation is an ingredient of every fed-

eral suit; otherwise there's no standing. See, e.g., *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 102–03 (1998).

According to plaintiffs, several of the defendants' shortcomings in operating the pig farm contribute to odors. That suffices to show causation, plaintiffs insist—enough, at least, to create a material dispute whose resolution belongs to a jury. But if the odor from a well-operated pig farm would make plaintiffs' land unlivable (as they insist it has become), a small increment is irrelevant. Plaintiffs' experts did not make any attempt to quantify the extent of the odor-enhancing effects of the defendants' shortcomings. Indeed, they did not offer even a rough qualitative estimate, such as the difference between "a lot" and "a little." Plaintiffs have not attempted to identify any large, well-run pig farm that avoids emitting the sort of noxious odors that plaintiffs say makes this farm a nuisance. Without any effort to show that a well-run pig farm is not a nuisance, or even any effort to show that the shortcomings plaintiffs see in defendants' operations contribute materially to how surrounding landowners perceive the farm's odors, there is nothing for a jury to determine.

Plaintiffs may believe that at a trial they could present the sort of information that the district judge found missing from this record. But summary judgment is the time when litigants must assemble the admissible evidence. Like the district court, we must evaluate the record as it stands. On this record, a reasonable jury could not find that the shortcomings plaintiffs' experts found in defendants' operations make the difference between a nuisance and a good neighbor. The judgment therefore is affirmed.